McCORMICK v. HOUSTON PRINTING CO. (No. 6743.)

(Court of Civil Appeals of Texas. Galveston. Feb. 2, 1915. Rehearing Denied March 4, 1915.)

Libel and Slander ⬅️82—Pleading—Petition—Sufficiency.

Where the petition in an action for libel set out that plaintiff conducted a rooming house in the neighborhood of a station, and further alleged an article published in defendant's newspaper recommending that a car load of dynamite be placed under the bunch of disorderly houses around such station placarded as rooming houses, such petition was insufficient to state a cause of action, although plaintiff's house was alleged to display a sign reading, "Furnished Rooms;" since there was nothing in the libel itself connecting plaintiff's house with the houses referred to, while the allegation in the petition that his house was referred to was a mere allegation of an inference or conclusion of the pleader based upon the facts alleged and not admitted by demurrer.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 187–197; Dec. Dig. ⬅️82.]

Error from District Court, Harris County; Wm. Masterson, Judge.

Action by Virgil McCormick against the Houston Printing Company. Judgment for defendant, and plaintiff brings error. Affirmed.

E. H. Vasmer, James Slyfield, and Wm. Glover, all of Houston, for plaintiff in error. Thomas H. Stone, of Houston, for defendant in error.

McMEANS, J. This was an action brought by Virgil McCormick against the Houston Printing Company to recover damages alleged by the plaintiff to have been sustained by him by the publication and circulation in defendant's newspaper, the Houston Post, of an article alleged to be a libel of and concerning plaintiff. A general demurrer urged by defendant to plaintiff's petition was sustained by the court, and, plaintiff declining to amend, the case was dismissed, and from the judgment sustaining the demurrer and dismissing the case the plaintiff has appealed.

Plaintiff, in substance, alleged that on and for a long time prior to June 24, 1913, he had under lease and had full control and management of a house and residence occupied by himself and his father and mother as a home, situated on the west side of Crawford street, in the city of Houston, and facing east on Crawford street; that the Union Station in said city is and was situated on the east side of Crawford street, facing west, and occupies an entire city block, and that plaintiff's said residence is near and adjacent to said Union Station, being on the opposite side of Crawford street from said Union Station and about one-half block north thereof, and a distance of about 175 feet therefrom; that such rooms in the house as were not occupied for family purposes by plaintiff and his father and mother were held out to the traveling public and the public in general for rent, and were on divers occasions rented to other persons; that said house was commonly known as a rooming house, was in fact a rooming house, and placarded as a rooming house, the placards designating it as such being as follows: A large sign in front of said house, lettered upon glass and illuminated by night with an electric light, reading, "Crawford House. Rooms 50¢, 75¢ & $1.00 per Day;" a cardboard sign, tacked upon the railing of the gallery, reading, "Furnished Rooms;" and a cardboard sign, tacked upon the wall of the house, on the front gallery, also reading, "Furnished Rooms"—all of which were so placed for the purpose of informing the general public that the house was a rooming house. He further alleged his extreme care and caution in an ef-

fort to conduct an orderly house and to keep the same free from vice, and to exclude therefrom all persons of immoral character and lewd practices, and to deny the use of his premises to persons whom he had probable cause to believe were of bad character. He further alleged that on said 24th day of June, 1913, the defendant published, printed, and circulated in its newspaper, the Houston Post, which had a large and wide circulation, the following article, which he alleged was false, malicious, and a defamatory and wrongful statement of and concerning plaintiff and his said rooming house, viz.:

"The City's Cow Lot.

"Is a Knock to the Pretentions of the City of Houston.

"To the Post:

"As long as Houston maintains a cow lot in the center of the town, such as may be found in the rear of the city jail, no one takes your statement seriously regarding 'Cleaning up Houston.' One may travel the world over and not find such a disreputable, disease-breeding, noisome place as this located in the midst of a city. It is scandalous and most damnable. Get rid of this stink hole, or cut out your mouthing about 'Heavenly Houston.' Further, set fire to the row of Dago joints along Congress avenue, and use a car load of dynamite under the bunch of whorehouses around Union Station placarded as 'Rooming Houses.'

"Among the people in the East with whom I have talked recently refer to Houston as a joke, referring to its claims as a city. The stinking bayou is bad enough, but think of this dirty cow lot at the city jail. I am ashamed to mention Houston among men who travel, for I am met with derision on account of this backwoods condition, and the scissor-bill politicians who manage the affairs.

"J. M. Birchfield.

"Houston, Texas."

He then alleged that on said date and during his entire life he had lived a moral and upright life; that he is a man of good reputation, and had always borne the reputation of being a moral and law-abiding man among his friends and neighbors and acquaintances, and among all persons who had had an opportunity to learn and know plaintiff's true character and reputation. He also alleged the good reputation of his house. The seventeenth and eighteenth paragraphs of the petition consist of innuendo, and read as follows:

"XVII. Plaintiff represents to the court that the clause in the said libelous publication reading, 'and use a car load of dynamite under the bunch of whorehouses around Union Station placarded as "Rooming Houses,"' meant and intended to mean, and charged and was intended to charge, plaintiff's residence and place of business was a whorehouse, and it was so understood by all of plaintiff's friends and acquaintances who read said publication and knew that plaintiff resided near the Union Station, and knew that he had his house placarded as a rooming house; and said publication did thereby charge this plaintiff with running and conducting a whorehouse, that he kept and housed in his said residence and place of business common prostitutes, harlots, and strumpets, and that he kept and housed women of low, lewd, and debauched character who prostituted their bodies for hire and held unlawful commerce with men; and said publication thereby charg-

ed and intended to charge this plaintiff was a moral pervert, and was a low, degraded, and lascivious character, and that plaintiff procured money and a livelihood from the fruits and profit of running and conducting a whorehouse; all of which is wholly false and untrue, and is and constituted a libelous defamation of plaintiff.

"XVIII. Plaintiff represents that the defendant did, by the publication as aforesaid, and especially by the clause therein 'and use a car load of dynamite under the bunch of whorehouses around Union Station placarded as "Rooming Houses,"' charge this plaintiff with the crime of running a disorderly house in the city of Houston, Harris county, Tex., within the meaning of articles 359, 359a, 360, and 361 of the Penal Code of the state of Texas."

The nineteenth paragraph of the petition alleges the damages sustained by plaintiff, and the twentieth contains a prayer for judgment for $30,000, for costs, and general relief.

After mature consideration, we have concluded that the general demurrer to the petition was properly sustained. In Harris v. Santa Fé Townsite Co., 125 S. W. 77, this court, in holding that the plaintiffs' petition in that case failed to state a cause of action, said:

"While it was not necessary that the alleged libelous publications should have mentioned the name of the person intended to be libeled, and a cause of action in favor of the person injured by such publication is shown when the circumstances alleged point to him as the person concerning whom the libelous statements in the publication are made, the petition in such case must allege facts from which it can be reasonably inferred that plaintiff was the person intended to be libeled. The rule is thus stated in 25 Cyc. 449: 'The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. If the words used really contain no reflection upon any particular individual, no averment or innuendo can make them defamatory. An innuendo cannot make the person certain which was uncertain before.' 'An innuendo is not an averment of fact, but an inference of reasoning.' 12 Ency. Pl. & Pr. 49. The averment or innuendo that plaintiff was the person referred to will not make the petition sufficient, unless the facts and circumstances alleged are such that the truth of the innuendo can be reasonably inferred therefrom. The question is 'whether the explanation given (by innuendo) is a legitimate conclusion from the premises stated,' and to determine this question must be in all cases the exclusive province of the courts. * * *"

The defamatory words published upon the face of the publication referred to "the bunch of whorehouses around Union Station, placarded as 'Rooming Houses.'" No allegation by way of colloquium was made to show that plaintiff's house was included in the class denominated "whorehouses." It was not alleged that there was not a "bunch" of whorehouses around Union Station placarded "Rooming Houses," nor, indeed, was it alleged that there was a bunch of rooming houses so situated to which the publication would apply or that plaintiff's house was one of a bunch that would fall within that designation. So far as the allegations of the petition show, the only house in such proximity to the Union Station as to fall within the locality described—that is, "around the Union Station"—which was placarded at all,

was plaintiff's house, and it was not placarded "Rooming House," although the placards it bore perhaps conveyed the same meaning. The publication had reference to a "bunch of whorehouses" placarded "Rooming Houses," and not to a solitary rooming house located on the "opposite side of Crawford street from said Union Station, and being about one-half block north of said Union Station and a distance therefrom of about 175 feet," as plaintiff alleged his house to be. It is true that the plaintiff endeavored by innuendo to so state his own conclusions from the article published charged him, as the proprietor of the Crawford House, with furnished rooms to rent, with being, in fact, a proprietor of a whorehouse. It may be conceded that a whorehouse may be so placarded as to appear to be a rooming house, but we cannot agree to the converse of the proposition which plaintiff seems to urge in his petition, without sufficient averments of fact to sustain his conclusion that a rooming house, or a house with furnished rooms for rent, and so placarded, may reasonably be considered to be a whorehouse by reason of its placards. Certainly such conclusions, so expressed by innuendo, do not follow from the charges contained in the publication, when, in the same pleading in which he urges such conclusion, he distinctly avers his good character and his reputation for good character in the neighborhood in which he lives, and also the good character of his house and its reputation for good character in the neighborhood in which it is situated. A general demurrer only admits the truth of the facts pleaded, and does not admit the truth of the inference or conclusion of the pleader based upon the facts alleged, unless the facts are sufficient to authorize such inference or conclusion. Allegation in the petition in this case that the publication complained of was made concerning plaintiff, being but a conclusion of the pleader from the facts alleged, and such facts being insufficient to sustain or justify such conclusion as a reasonable inference therefrom, the demurrer was properly sustained. Harris v. Townsite Co., supra; Witham v. Atlantic Journal, 124 Ga. 688, 53 S. E. 106, 4 L. R. A. (N. S.) 977.

The case of Schulze v. Jalonick, 29 S. W. 193, relied upon by appellant, does not support his contention that the petition in this case is sufficient. In that case the petition charged libel upon a publication which stated that the plaintiff, Alvin Schulze, was the owner of a building in which an illegal business known as a "blind tiger" was conducted. The name of the plaintiff being thus connected with the unlawful business, the averment or innuendo that the defendant intended by the publication to charge plaintiff with being engaged in the conduct of such business was a reasonable inference from the facts stated in the publication, and therefore the facts alleged in the petition were sufficient to sustain the innuendo.

Having reached the conclusion that the general demurrer was properly sustained, it follows that the judgment of the court below should be affirmed; and it has been so ordered.

Affirmed.