Frank GIBLER, Appellant,

v.

The HOUSTON POST COMPANY et al., Appellees.

No. 13175.

Court of Civil Appeals of Texas.

Houston.

Jan. 23, 1958.

Rehearing Denied Feb. 20, 1958.

Ernest S. Fellbaum, Houston, for appellant.

Jack Binion and Lyon L. Brinsmade, Houston, and Butler, Binion, Rice & Cook, Houston, of counsel, for appellees.

WERLEIN, Justice.

This suit was filed by appellant, Frank Gibler, against The Houston Post Company and Owen P. Flaherty, appellees, alleging that on or about August 23, 1955, appellee, The Houston Post Company, acting by and through its agent and employee, the appellee, Owen P. Flaherty, using the facilities of its television station, KPRC-TV, at about 10:30 p. m. on said date, then reading from a prepared written script, did publish and cause to be published words of and concerning the appellant which were wholly and completely untrue and false and which defamed and libeled appellant; said words being substantially as follows:

"Mayor Hofheinz has completed his investigation into the so-called international incident at the Houston airport and has found that there was in fact no international incident at all. It was just the fabrication of a bystander, who gave out an erroneous report. And so, after investigation by authorities and the State Department and the Civil Aeronautics Board and the City of Houston, it develops that there was no international incident and no racial discrimination. It was just a case of a person with a loose tongue, given to fabrication, circulating an erroneous report."

Appellant alleged further that throughout his adult life he had pursued the business and profession of newspaper work, reporting, publicity and public relations, and enjoyed a reputation for ability and integrity in his work and for accuracy and reliability in his reporting of news, and that he had factually and truthfully reported an incident which occurred at the International Airport at Houston which he personally observed, wherein the Ambassador from India to the United States, upon visiting the Horizon House Restaurant at the Airport, was asked by an employee of the restaurant to move from the public section of said restaurant to a private dining room used by members of the Negro race because said employee mistook said person for a member of that race.

Appellant further alleged that the statements of and concerning him, and accusing him of fabricating or lying, in connection with his report of the incident, were intended to, and did, apply to plaintiff and no other person, and his family, friends, acquaint-

ances and employers, as well as the average viewer and listener, were led to believe and did actually believe that the malicious and libelous publication in question referred to appellant. He further alleged that upon occasion of the publication of such libelous statements concerning him, there was widespread publicity in the newspapers and radio and television stations in the City of Houston, Harris County, Texas, expressly identifying and naming appellant as the person referred to as making the report mentioned in the libelous and defamatory statements sued upon. In such connection the appellant further pleaded that The Houston Post Company, on the same date, in its newspaper, The Houston Post, named the plaintiff as the person who had made such report, being the report referred to in said libelous words.

Appellant then pleaded that he was now and had been for many years in the field of public relations, a profession in which factual and truthful statements of facts and events are an integral part, and that the alleged defamatory words and publication irreparably injured him in his business and profession, and that his reputation and character had been injured and he had been exposed to public hatred, contempt and ridicule and his honesty, integrity and reputation were impeached, and that he had been caused to suffer mental anguish, embarrassment, shame and distress. He further pleaded that the statements complained of were malicious and made in utter disregard of his rights and in a degree of carelessness amounting to gross negligence, for which he was entitled to recover exemplary damages.

To appellant's petition appellees filed their first amended original answer, denying appellant's allegations, and averring that the appellees did not at any time mention, specify, name or refer to appellant in any way or manner. They then alleged that Mayor Hofheinz, the Mayor of the City of Houston, had conducted an official investigation in regard to the incident in question, and that later in the day of August

23, 1955, the Mayor, through his office, issued a statement and conclusions regarding his investigation, and that based upon said statement and conclusions issued by the Mayor of the City, appellee Pat Flaherty did broadcast over the Station in question the following:

"Mayor Roy Hofheinz has completed his investigation of the so-called international incident involving the Indian Ambassador to the United States * * * and the Mayor has found that it was no international incident at the Houston International Airport yesterday afternoon * * * it was the fabrication of a bystander, who gave out an erroneous report * * *. In other words, the case involving the Indian Ambassador to the United States, and his secretary, was just as the Ambassador reported today from Mexico City * * *. They were treated with the fullest courtesy and esteem by Mrs. Mary Alley * * *. They were directed to the special dining room, reserved for distinguished visitors at the airport * * *. And they were completely satisfied with the treatment, service and food.

"Mrs. Alley also issued a statement, through the Mayor's office, saying, she felt the Ambassador and his secretary were distinguished visitors * * * And that she acted accordingly * * * She made a special point to serve them properly.

"Mr. & Mrs. Percy Strauss of Houston, visited with the Ambassador and his secretary, in the private dining room.

"So, after apologies from the American State Department * * * Mayor Hofheinz * * * And, an investigation by the Civil Aeronautics Department, it develops that there was no international incident * * * No racial discrimination * * * It was just a case of a person with a loose

tongue, given to fabrication * * *
And circulating an erroneous report."

Appellees then alleged that the broadcast was based upon the report as given by Mayor Hofheinz at his office, and that the same was a matter of public concern, made in the utmost good faith, and that such broadcast could not be construed by innuendo or otherwise as pertaining to appellant. They further pleaded that such broadcast was privileged, at least conditionally so, under Article 5432, Sec. 4, Vernon's Annotated Civil Statutes. They also pleaded that said broadcast constituted a reasonable and fair comment or criticism of matters of public concern which were published and broadcast for general information, and that they had used due care in investigating and commenting upon the Mayor's investigation, and that said broadcast was made without malice and was a factual and truthful statement of the Mayor's report.

They further alleged that the Houston Post did on the morning of August 23, 1955, preceding the broadcast that night, carry a news story with regard to the incident in the Horizon House Restaurant, in which the names of Gibler and other persons were mentioned.

Neither the petition nor answer in the case was sworn to, nor was any affidavit filed by appellees denying the allegations of appellant's petition. The depositions of both appellant and appellee Flaherty were taken and are before this Court. Appellees filed an unsworn motion for summary judgment, in which they alleged that the pleadings, depositions and testimony on file showed that there was no genuine issue as to any material facts and that they were entitled to a judgment as a matter of law, under the provisions of Rule 166–A, Texas Rules of Civil Procedure. The motion for summary judgment was granted, and the trial court decreed that the appellant take nothing by his suit.

Appellant duly perfected his appeal and the case is now before this Court for review.

The sole question before this Court is whether upon the pleadings in the case and the depositions and exhibits on file, the trial court erred in finding as a matter of law that there was an absence of any genuine issue as to the material facts of appellant's alleged cause of action for libel.

Appellees have submitted two separate grounds in support of the trial court's judgment, their first counter-point being that the trial court properly rendered such summary judgment because neither the news broadcast of Flaherty nor the news story in the Houston Post, named or referred to appellant Gibler as the person circulating the erroneous report, and there was no evidence to justify a conclusion that he was.

It is true that no name was mentioned in the news broadcast in question. It is also true, contrary to appellant's pleading, that the item in the Houston Post on the morning of August 23, 1955, did not state that appellant was the party who reported the incident to the paper. Several persons were spoken of in such news article. It stated that "Witnesses (plural) to the incident said that the Ambassador was not receiving the VIP treatment but was served privately because a restaurant employee thought he and his secretary were Negroes." It also stated that "Air port employees said that the small private dining room is sometimes used for visiting celebrities who desire privacy but that it is also used to accommodate Negroes on the infrequent occasions that they ask for service in the airport restaurant." It further stated that Jim Gibson, Station Manager for Pan American World Airways, was present but refused to comment for publication; that Frank J. Russell, proprietor of the restaurant, could not be reached; and that Mrs. Alley was unavailable for comment.

The same news article had the following to say about Frank Gibler:

"Frank Gibler, a well-traveled Houston public relations counsel, was in the restaurant at the time and recognized the pair as natives of India.

"He asked Mrs. Alley what she would have done if they had refused to leave the public part of the restaurant. Mr. Gibler quoted the supervisor as saying:

" 'The law's the law, and I would have had to have them moved.'

"Mr. Gibler said Mrs. Alley told him she asked the two men to move to the private room because she thought they were Negroes."

Appellant testified in his deposition that the news article in the Houston Post on the morning of August 23 indicated that he was the one who made the report to the paper; that it stated that he (Gibler) recognized the pair as natives of India. He further testified that the only way the Houston Post could have known that he recognized anyone was to ask him. Moreover, the article gave as a direct quote from Gibler, Mrs. Alley's reply to a question Gibler asked her.

Appellant also testified that if he had not called the Post, the Post would have said, "Mr. Gibler told bystanders, or it is understood that Mr. Gibler has said to bystanders.—It indicates as clearly, in common newspaper practice, as could be that there was a direct interview between me and the Post." The article does not state that Gibler reported the incident. Nevertheless, it does not quote from any named witness other than Gibler, who was present.

In his deposition Mr. Gibler further testified, "And furthermore, when I talked to Mr. Flaherty, he admitted that he was talking about me." This was immediately after the broadcast when Mr. Gibler called Mr. Flaherty.

In determining whether there was any evidence of the identity of appellant, we must accept as true the facts alleged in plaintiff's pleading especially since no affidavit was filed by appellees denying same. Appellant pleaded in part:

"That all of such statements of and concerning the Plaintiff, and accusing him of fabricating or lying, in connection with his report of the incident were intended to, and did, apply to Plaintiff and no other person, and his family, friends, acquaintances and employers, as well as the average viewer and listener, were led to believe, and did actually believe, that the malicious and libelous publication referred to Plaintiff. That upon the occasion of the publication of such libelous statements of and concerning the Plaintiff, there was widespread publicity in the newspapers and radio and television stations in the City of Houston, Harris County, Texas, all of which was known to the Defendants herein, expressly identifying and naming Plaintiff as the person referred to as making the report mentioned in the libelous and defamatory statements herein sued upon."

Moreover, in his deposition, appellant, when asked why he stated that the broadcast referred to him directly and to no one else, replied:

"A. Because there was only one bystander who had reported the thing. My name had been used in two editions of the Post. And in all of the editions of the two afternoon papers, as the person who saw the incident and who reported it. And it had been used—

That, of course, was available to Mr. Flaherty. It had been used in I have no idea how many papers but in hundreds of other newspapers throughout the world.

"Q. Are you sure of that? A. Well, I have—I know that it was set

out by the Associated Press and I know that they serve a great many papers.

"Q. Well, you say it was sent out by the Associated Press. What I am trying to get at, Mr. Gibler, what was sent out by the Associated Press? A. The report which I made, and quoting me."

Appellant had been engaged in the newspaper, reporting, publicity and public relations work in the City of Houston for many years. There seems to be little question but that his family, acquaintances, friends, and employers, newspaper men, and possibly others, who had read the article in the Houston Post or in either of Houston's two afternoon papers before or after the broadcast, would have concluded that Flaherty was talking about appellant in his telecast that night.

The following testimony is also pertinent:

"Q. Now, you have alleged that since the result of the libel, your reputation and character were or have been questioned. Has anybody ever questioned your character? A. As my reliability as a reporter.

"Q. Who has? A. As I have told you sometime ago, I believe that one was Mr. Frazier. And that he said, 'Aren't you getting kind of careless, Frank?' And a number of the people at the Press Club.

"Q. Would you mind naming them? A. No, I would have to kind of refresh my memory and ask some of them. I think Ben Kaplan was one. I think Dick Tate at the Chronicle was one. And I believe Walter Mansell of the Chronicle was one.

"Q. You mean they questioned your character? A. They asked me if I was getting unreliable as a reporter in my old age.

"Q. Is that the way they asked you that? A. And another one. An-
other absolute reflection on it by a newspaper man was made by the Chronicle editorial writer, who acts as a correspondent for Newsweek. And he went so far as to question the three City editors concerning my character, to see whether or not Flaherty's statement concerning me were borne out. There was that much doubt instilled into his mind by what Flaherty had said, and he got a statement from O'Leary, from Allison and from Jack Donohue."

■ We have concluded that upon the pleadings, depositions and exhibits on file there was a genuine issue of fact as to whether appellant was the party referred to in the broadcast in question.

Appellees rely on several cases which are distinguishable from the present case. In the case of Bull v. Collins, Tex.Civ.App., 54 S.W.2d 870, no writ history, cited by appellees, the employer, sued for slander, stated in substance, "I don't understand about this money; you two (i. e., plaintiff and Harmon Morrison, Jr.) are the only ones, the only ones that handled it, (referring to the money), and it must be one of you two that did it." The court held that words importing an accusation that either A or B stole money, without indicating whether the one or the other, were not sufficient to charge that A stole the money. In the instant case, only one person was charged with having a loose tongue, given to fabrication.

Appellees also refer to Harris v. Santa Fé Townsite Co., 58 Tex.Civ.App. 506, 125 S.W. 77, 80, error refused. In this case the alleged libelous article stated in effect that the special detective had discovered nine women (meaning thereby plaintiff's wife and others) in the act of cutting fences. It seems that the controversy giving rise to the defamatory statements and publications was between the Santa Fe Townsite Company and its officers and the inhabitants of South Silsbee, consisting of about 17 men and 15 women,

including plaintiff and his wife. The plaintiff alleged that there were nine men and their wives, including plaintiff and his wife, living in said South Silsbee who were more prominent than the other inhabitants thereof in the controversy aforesaid. From this the plaintiff concluded that the alleged libelous and slanderous statements included the plaintiff and his wife, although there was nothing at all to show which nine women out of the 15 women were included in the defamatory statements. Under these circumstances, the court very correctly held as follows:

"The averment or innuendo that plaintiff was the person referred to will not make the petition sufficient unless the facts and circumstances alleged are such that the truth of the innuendo can be reasonably inferred therefrom * * *.

" * * * At the time mentioned in the publication 15 women and 17 men resided in South Silsbee. Plaintiff and his wife had nothing to do with the cutting of the fence. It seems to us that these facts so far from sustaining negative the conclusion that plaintiff or his wife was intended to be referred to in the alleged libelous publication. There is no denial in the petition that the fence was cut as charged, nor that nine women of South Silsbee were engaged in its cutting, and upon the face of the publication the only persons referred to were the nine unnamed women who did the cutting. The fact that plaintiff was prominent among the 30 or more inhabitants of said town in opposing the construction of the fence could raise nothing more than a suspicion or surmise that he and his wife were referred to in said publication, and cannot be held to be any evidence of the fact that such publication did refer to them."

Appellees also rely on the case of McCormick v. Houston Printing Company, Tex.Civ.App., 174 S.W. 853, error refused. This case is also distinguishable from the instant case in that it was impossible in such case to identify the plaintiff as the subject of the libel in question.

In the case of McDavid v. Houston Chronicle Printing Co., 146 S.W. 252, 260, no writ history, in which the Austin Court of Civil Appeals reversed and rendered the judgment of the trial court, sustaining a demurrer to the petition of the plaintiffs, counsel for appellee strenuously contended that the petition stated no cause of action, because the publications complained of contained nothing to show that such statements had reference to either of the plaintiffs. The court held that while the first publication did not mention the name of any person, still the court was of the opinion that it tended to injure the reputation of the plaintiff, Mrs. McDavid, if the two publications together, *considered in connection with all the other facts alleged, sufficiently identified her as the mother referred to in the first publication.* (Emphasis ours.) The court, through Chief Justice Key, stated:

"Counsel for appellee assert the proposition, which may be conceded as true, that in order to constitute libel, the defamatory words complained of must refer to some ascertained or ascertainable person, and that person must be the plaintiff. It is also asserted that if the words used contain no reflection upon any particular individual, ascertainable solely from the publication, no innuendo can make them defamatory, or make certain the person who was uncertain before. We cannot yield assent to the latter proposition. Harris v. Santa Fé Townsite Co. [58 Tex.Civ.App. 506], 125 S.W. 77, and Galveston Tribune v. Guisti [Tex.Civ.App.], 134 S.W. 239, cited by counsel in support of that proposition, are not regarded as analogous; and, besides, the Supreme Court has granted a writ of error in the Guisti

Case, and it is still pending in that court. This court has heretofore had occasion to consider the question of identity in Houston Printing Company v. Moulden, 15 Tex.Civ.App. [574] 586, 41 S.W. 381, and Schulze v. Jalonick, 14 Tex.Civ.App. [656] 663, 38 S.W. 264."

In the Moulden case, 41 S.W. 381, 385, no name was mentioned in the publication. The publication stated in substance that indignation was expressed in the Grand Central Depot at the chaining together of a man and woman. That the young man and his wife were chained by the necks and were in charge of an officer en route to some town in north Texas. There was nothing in the publication to disclose who the officer was. However, at the time referred to in the publication the sheriff of Collin County was in the Grand Central Depot at Houston and had in his custody and under arrest a young man accompanied by his wife, who was not chained to him, nor otherwise restrained or molested. In disposing of the question of identity, the court stated:

"Appellant also complains by assignment that the court erred in overruling the first and second special exceptions to the petition, because the petition affirmatively shows that the libelous publication does not mention the plaintiff directly nor indirectly, nor does it refer to him or describe him in any manner whatever, and because the alleged libel does not refer to plaintiff or his office by 'name, fame, or description,' nor include or reach him by naming, mentioning, or description of any circumstance known to the public, nor name any transactions which refer or point to the plaintiff. It was not necessary, to make the article published libelous, that plaintiff should have been named, if he was pointed out by circumstances. The officer in charge of the prisoner, Foreman, was the person libeled, and the facts show that the plaintiff is that person. The libel, with the colloquium and innuendo, un-deniably identifies the plaintiff as the officer guilty. It is only necessary that the words refer to some person ascertainable from the words used. Any one who was or should become conversant with the facts could not mistake the person and the officer accused."

So, in the present case, accepting the appellant's pleading and the testimony of appellant as true, as we must do, there can be little doubt that appellant and no one else was the person who was accused by appellee Flaherty in the statement. "It was just a case of a person with a loose tongue, given to fabrication, and circulating an erroneous report."

In the case of Schulze v. Jalonick, 14 Tex.Civ.App. 656, 38 S.W. 264, 267, no writ history, in which judgment for defendants was reversed on appeal, the court made the following statement:

"We conclude that the petition was sufficient to authorize the admission of legitimate testimony in libel. The plaintiff may call his friends, or those acquainted with the circumstances, to state that, on reading the libel, they concluded it was aimed at the plaintiff. What readers of the libel understood with reference to it, who was meant, and what was meant would be proper testimony, in case the language is ambiguous; and from such testimony and the surrounding circumstances the jury are at liberty to form their conclusion. 2 Starkie, Sland. & L. 46–51; 13 Am. & Eng. Enc. Law, text, and authorities cited in note 2, p. 393; 2 Greenl.Ev. § 417; Wimer v. All-baugh [78 Iowa 79] 42 N.W. 587; Zeliff v. Jennings, 61 Tex. [458] 464. There is a conflict of authority as to the admissibility of testimony of persons acquainted with the circumstances that they, from reading the libelous language, applied it to the plaintiff; but the weight of authority is that such testimony is admissible, and we think such testimony should be admitted."

As stated in Prosser on Torts, 2d Ed., p. 583, with supporting authorities:

"A publication may clearly be defamatory as to somebody, and yet on its face make no reference to the individual plaintiff * * * He need not, of course, be named and the reference may be an indirect one; *and it is not necessary that every listener understand it, so long as there are some who reasonably do.*" (Emphasis ours.)

In the instant case, there can be little question but that the friends and acquaintances of the appellant, as well as men engaged in newspaper work, identified the party accused in the broadcast in question as appellant, Frank Gibler.

Appellees contend in their second counter-point that the trial court properly rendered summary judgment in their favor because the broadcast of Flaherty was privileged as a matter of law and that on the pleadings and undisputed evidence no reasonable inference may be drawn or sustained to justify the conclusion that appellees published the same with malice.

Article 5432, V.A.T.S., provides in part as follows:

"The publication of the following matters by any newspaper or periodical shall be deemed privileged and shall not be made the basis of any action for libel.

\* \* \* \* \* \*

"4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information."

█ The law appears to be settled, and there is no contention made in the instant case to the contrary, that broadcasting by reading defamatory statements from a written script constitutes the publication of a libel rather than slander. See Prosser on Torts, 2d Ed., p. 598, and authorities cited.

It is true as contended by appellees that where the language complained of is not ambiguous, or where the facts and circumstances surrounding the publication are undisputed, the existence of privilege with respect thereto is a question for the court to determine. See Fitzjarrald v. Panhandle Pub. Co., 149 Tex. 87, 228 S.W.2d 499; Johns v. Associated Aviation Underwriters, 5 Cir., 1953, 203 F.2d 208, certiorari denied 346 U.S. 834, 74 S.Ct. 38, 98 L.Ed. 356.

█ According to the testimony of appellee Flaherty, he based his broadcast on a report of the investigation of Mayor Roy Hofheinz which he testified had been telephoned to him by one of the executive assistants to the Mayor. Beyond doubt, the incident in question was one of great public concern and one on which a commentator would be permitted to make a fair comment. According to appellees, the Mayor found that there was no international incident at the Houston International Airport, and that "It was the fabrication of a bystander, who gave an erroneous report." The report of the Mayor mentioned a single fabrication or erroneous report. The statement made by Mr. Flaherty was "It was just a case of a person with a loose tongue, given to fabrication, and circulating an erroneous report." We do not believe that this latter statement made by appellee Flaherty can be considered a fair comment or criticism of the incident in question; nor can it be considered a fair comment of the report made by the Mayor. There is a great deal of difference between charging a person with a single fabrication and an erroneous report, and charging him with having a loose tongue given to fabrication and circulating an erroneous report. The latter statement clearly charges the person as being a habitual fabricator or liar. A man may make up one story and give out one erroneous report without being a habitual liar. It is our conclusion, therefore, that the latter statement made in the broadcast constituted an unwarranted extension of the Mayor's report and was not a fair comment under Article 5432, Sec. 4,

V.A.T.S. of either the report or the incident reported.

 Appellant has alleged that the statement made by appellee Flaherty was false. The question of whether it was true or false certainly was a question of fact for the jury. If it was false, then there can be no question but that it could give rise to an action for libel without proof of malice. Under the statute defining "libel," a libelous publication, contrary to the common law rule, is actionable without proof of malice, regardless of whether it is libelous per se, and it is not necessary to the right to maintain an action for a publication not libelous per se to allege or prove special damages. See State Medical Association of Texas v. Committee for Chiropractic Education, Inc., Tex.Civ.App., 236 S.W.2d 632.

See Bell Pub. Co. v. Garrett Engineering Co, Tex.Com.App., 141 Tex. 51, 170 S.W.2d 197, 204, in which it is stated:

"Although the authorities are not unanimous, it is the law of most jurisdictions, and is the settled law of Texas, that a false statement of fact concerning a public officer, even if made in a discussion of matters of public concern, is not privileged as fair comment. Moore v. Leverett, Tex.Com. App., 52 S.W.2d 252; A. H. Belo & Co. v. Looney, 112 Tex. 160, 246 S.W. 777; Ferguson v. Houston Press Co., Tex. Civ.App., 1 S.W.2d 387, affirmed Tex. Com.App., 12 S.W.2d 125; Galveston Tribune v. Johnson, Tex.Civ.App., 141 S.W. 302 (writ refused); 33 Am.Jur. 164; 110 A.L.R. 412 (annotation); 27 Tex.Jur. 670. The rule stated in the A.L.R. annotation is as follows: 'In the majority of jurisdictions the rule that *fair comment on and criticism of* the acts and conduct of a public officer or candidate for public office are, in the absence of malice, privileged, *does not apply to a false statement of fact.* In these jurisdictions, a defamatory statement of fact concerning one in public life, or who is a candidate for office, if false, is as actionable as would be such a statement concerning one in private life.'"

The court further stated:

"These cases are authority for the rule that a misstatement of fact published in a newspaper of general circulation is not excused by absence of malice on the part of the publisher, even though made concerning the qualifications or character of a public official or candidate for public office, as well as for the proposition upon which they were cited above that a misstatement of fact is not within the privilege of fair comment provided in section 4 of article 5432, supra. We overrule the contention of defendants that the alleged libelous statements are qualifiedly or conditionally privileged."

To like effect see Fitzjarrald v. Panhandle Pub. Co., supra.

A fortiori, a misstatement of fact concerning a private individual broadcast from a written script by a television station of wide coverage is not excused by the absence of malice on the part of the broadcaster, nor is it within the privilege of fair comment provided in section 4 of Article 5432, supra.

 In ascertaining from the record if a genuine issue of a material fact is presented, the provisions of Rule 166–A, T.R.C.P., "should be temperately and cautiously applied." Kaufman v. Blackman, Tex.Civ.App., 239 S.W.2d 422, 428. Ordinarily the movant seeking a summary-judgment is held strictly to a conclusive showing that no fact issue exists and that he is therefore entitled to judgment without further delay. If it appears that any substantial fact issue exists, the motion for summary judgment should be denied. See Whelan v. State, Tex.Civ.App., 252 S.W.2d 271, no writ history.

In Brownson v. New, Tex.Civ.App., 259 S.W.2d 277, 280, writ dismissed, the court stated:

"In order to test whether or not any pleaded issue is a genuine one, the allegation creating the issue may be attacked by the affidavit of one competent to testify, which asserts a set of facts contrary to the allegation. If this affidavit be traversed by proper affidavit or if, in accordance with the rule a satisfactory statement be made as to inability to counter the movant's affidavit, the motion fails because the record then does not show that no genuine issue of fact exists. Rule 166–A(e); Anderson v. United States, 1 Cir., 182 F.2d 296; Burley v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 140 F.2d 488, affirmed 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, Id., 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928; McDonald, Summary Judgments, 30 Tex.Law Review 285, 296, 299; 4 McDonald, Texas Civil Practice 1379, 1388, § 17.26. When, however, as is the case here, the movant proceeds without supporting affidavits, the motion is necessarily directed solely to the adequacy of the pleading as a matter of law."

In the instant case, appellant has alleged a good cause of action in his petition, and appellees have proceeded without supporting affidavits.

In Pattison v. Highway Insurance Underwriters, Tex.Civ.App., 292 S.W.2d 694, 699, refused, n. r. e., this Court, through the late Justice Gannon, succinctly stated the rule applicable as follows:

"The cases make it plain that in summary proceedings the burden rests heavily upon the moving party to negative *conclusively* the existence of a genuine issue in regard to some *controlling fact* entitling the movant to judgment. And that where it appears that such an issue 'may exist', summary relief is to be denied without regard to informalities or defects in the resisting party's showing. See Felker

Lumber Co. v. Superior Insurance Co., Tex.Civ.App. Texarkana 1954, 272 S.W.2d 161."

There is an analogy between a motion for a summary judgment and a motion to instruct a verdict, after all the evidence is introduced. The court, in Neigut v. McFadden, Tex.Civ.App., 257 S.W.2d 864, no writ history, stated that the defendant moving for a summary judgment assumes the negative burden of showing, as a matter of law, that the plaintiff has no cause of action against him and in order to prevail it must be shown that no material fact or facts entitling plaintiff to recover remains as an issue.

In Hunley v. Garber, Tex.Civ.App., 254 S.W.2d 813, 814 the court made the following statement:

"Rule 166–A provides that a summary judgment shall be rendered if the pleadings, depositions and admissions show, together with the affidavits, that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In this proceeding the burden of proof is upon the movant; all doubts as to the existence of a genuine issue as to a material fact must be resolved against him. Small v. Lang, Tex.Civ. App., 239 S.W.2d 441, writ ref., n. r. e.; De La Garza v. Ryals, Tex.Civ.App., 239 S.W.2d 854, writ ref. n. r. e."

See also Lesikar v. Lesikar, Tex.Civ. App., 251 S.W.2d 555, writ ref., n. r. e.

We have concluded that there are genuine issues of fact in the present case as to the identity of the person referred to in the broadcast in question, and also as to whether the statement made in the broadcast was true or false, and that therefore the court erred in decreeing a summary judgment in favor of appellees.

The judgment of the trial court is reversed and the cause is remanded for trial.