WILL HARRIS v. SANTA FE TOWNSITE COMPANY ET AL.

Decided January 14, 1910.

1.—Libel—Identity of Person—Pleading.

While it is not necessary that an alleged libelous publication should mention the name of the person intended to be libeled, and a cause of action in favor of such person is shown when the circumstances alleged point to him as the person referred to in the libelous statement, still the petition in such case must allege facts from which it can be reasonably inferred that plaintiff was the person intended to be libeled.

2.—Same.

If the words used really contain no reflection upon any particular individual, no averment or innuendo can make them defamatory. An innuendo cannot make the person certain which was uncertain before.

3.—Same.

An averment or innuendo that plaintiff was the person referred to in a libelous publication will not make the petition sufficient unless the facts and circumstances alleged are such that the truth of the innuendo can be reasonably inferred therefrom.

4.—Same—Case Stated.

The substance of a petition in a suit for libel was that, upon the face of the publications, the defamatory words referred only to nine unnamed women who reside in a certain village; plaintiff and his wife resided in said village and were among the most prominent of the citizens of that place who opposed the construction and maintenance of a fence alleged in the publication to have been feloniously cut by nine women of the town; at the time mentioned in the publication fifteen women and seventeen men resided in the village; a denial that plaintiff and his wife had anything to do with the cutting of the fence. Held, said facts instead of sustaining, negative the conclusion that plaintiff or his wife was intended to be referred to in the alleged libelous publication, and a general demurrer was properly sustained to the petition. Schulze v. Jalonick, 29 S. W., 193 and 14 Texas Civ. App., 656, distinguished.

5.—Same—Oral Repetition—Pleading.

The further allegation in a suit for libel that the libelous statements contained in the publication were repeatedly made orally by each of the defendants, could add nothing to the sufficiency of the petition in the matter of identifying the persons referred to in the publications.

6.—Same—Suit—Privileged Statements.

Allegations in a petition in a suit for damages are privileged and cannot be made the basis of an action for libel.

7.—Pleading—General Demurrer—Effect.

A general demurrer admits the truth of only the facts pleaded and not of any inference or conclusion of the pleader based upon the facts alleged, unless the facts alleged are sufficient to authorize such inference or conclusion. Rule applied in a suit for libel.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower.

*Smith, Crawford & Sonfield, A. L. Davis* and *J. D. Campbell*, for appellant.—Every reasonable intendment is indulged in favor of a

pleading demurred to generally. Whetstone v. Coffey, 48 Texas, 271; Canales v. Perez, 65 Texas, 293; Caldwell v. Harbert, 68 Texas, 324.

The petition shows that the articles complained of charged the parties referred to therein with felony under the statutes of the State, and the same were libelous *per se.* Houston Printing Co. v. Moulden, 15 Texas Civ. App., 584; Knapp v. Campbell, 14 Texas Civ. App., 199; article 795, Criminal Code, making it a felony to cut, injure or destroy fences.

The articles complained of do not give the names of the persons referred to; but a publication need not specially name the plaintiff as the party or one of the parties against whom the libelous language is directed. If the language used and the surrounding circumstances are such as to cause those to whom the matter is supposed to refer, or their friends and acquaintances to understand that it was so intended, an action will lie. The petition is sufficient when the libel, colloquium and innuendo identifies the plaintiff as the person or one of the persons referred to. Schulze v. Jalonick, 14 Texas Civ. App., 663; Gulf, C. & S. F. Ry. Co. v. Floore, 42 S. W., 607; Houston Printing Company v. Moulden, 15 Texas Civ. App., 584; Kenworthy v. Journal Company, 93 S. W., 885; Russell v. Kelly, 13 Am. Rep., 170; Odgers, Libel & Slander, 127; Newell, Slander & Libel, 259; 2 Starkie on Slander, 46-51; 18 Am. & Eng. Enc. Law, 996; 25 Cyc., 438; 2 Greenleaf Evidence, sec. 417; Schulze v. Jalonick, 29 S. W., 193.

Where more than one person is referred to, or a class designated, in a libelous publication, anyone may have a cause of action upon a showing that the libelous publication referred to him. Schulze v. Jalonick, 29 S. W., 193; Jones v. State, 38 Texas Crim. Rep., 364, 70 Am. St. Rep., 756; Newell, Slander & Libel, 257; Hardy v. Williamson, 22 Am. St. Rep., 479; Wofford v. Meeks, 87 Am. St. Rep., 69.

The petition charges the Santa Fe Townsite Company, through its officers and agents, acting within the scope of their authority, and W. W. Fortenberry and E. J. Eyres, individually and as such officers, jointly with the Houston Printing Company, with the making and publishing of the publications complained of, and that the Santa Fe Townsite Company authorized, adopted, ratified and confirmed all the acts of their officers, and the said publications, being libelous, all who caused or participated in the publications are liable therefor. Cranfill v. Hayden, 75 S. W., 573; 25 Cyc., 427 and 429 (VI) and authorities cited.

*Fisher, Sears & Sears* and *Andrews, Ball & Streetman,* for appellees.

PLEASANTS, CHIEF JUSTICE.—This suit was brought by appellant against the appellees, Santa Fe Townsite Company, the Houston Printing Company, W. W. Fortenberry and E. J. Eyres, to recover damages for certain alleged libelous publications concerning plaintiff and his wife, which appeared in the Houston Daily Post on September 1, September 3 and September 11, 1906.

After the formal allegations giving names, domicile and residence of defendants, the petition alleges in substance that the defendant

Townsite Company is the owner of all the land surrounding the railroad station at the town of Silsbee in Hardin County, and that all of the business houses and residences in said town are situated on the land of said company and owned by it, and said defendant was therefore able to control the occupancy and rental value of all the buildings in said town, which contains about three thousand inhabitants. That prior to the publications complained of a new townsite containing about fifty acres of land was platted and laid out by parties adversely interested to said defendant, which new townsite was called South Silsbee. That the establishment of said new town and the moving thereto of plaintiff and his family and others engendered bitter hostility towards plaintiff and the other inhabitants of said new town on the part of said defendant, and that for the purpose of harassing and annoying plaintiff and the other inhabitants of South Silsbee and preventing the growth of said town, defendant, who owned the vacant land lying between said town and the town of Silsbee, caused the same to be fenced, which fence it is alleged crossed a public road leading from South Silsbee to the town of Silsbee, and thereby the residents of South Silsbee were cut off from the only way they had of reaching said town of Silsbee where all the public conveniences and places of resort, as well as the railroad machine shops, where most of the men who lived in South Silsbee worked, were situated. That prior to the publications complained of the defendant Townsite Company and W. W. Fortenberry, its manager, and E. J. Eyres, its secretary, as officers of said company and in their individual capacity declared and notoriously circulated and published that the fence before mentioned had been unlawfully cut by persons other than its owners and in such manner as to constitute such cutting a felony under the laws of this State. The portions of the publications upon which the charge of libel is based in the petition, as set out in appellant's brief, are as follows:

"That the article published on the 1st day of September, 1906, is headed 'Fence Cutting—Women Do the Work While the Men Look On.'

"That in the body of the article appears, 'The trouble at Silsbee caused by cutting of the fence on the enclosure of the Santa Fe Townsite Company and the Kirby Lumber Company by the women of the neighborhood (meaning thereby the plaintiff's wife and others) is still brewing.'

" 'The special detective attached to the United States Marshal's office discovered nine women (meaning thereby plaintiff's wife and others) in the act of cutting fences, and armed with cans of kerosene, more trouble has ensued. The night following and in the ensuing night the fences were again cut, the destruction of property being on a more extensive scale than before. The cutting of the fences is presumed to be in retaliation for the refusal of the Kirby Lumber Company and the Santa Fe Townsite Company to permit the opening of a public road leading from South Silsbee to the Santa Fe roundhouse.'

" 'Detective John Weaver returned from Houston today and will go to Silsbee tonight. He states that after receiving the advice of

counsel at Houston it was found that there was no federal statute covering the offense of wire cutting, but there was a rigid Texas statute making it a penitentiary offense to commit this act (thereby meaning that the plaintiff, his wife and others had committed a penitentiary offense and a felony). The charges are to be made against them (meaning thereby plaintiff's wife and others) under the State law, it is said, and the matter laid before the grand jury in the near future.'

"That the publication of the 3d of September, 1906, contains the following: 'Information from Silsbee today is that the fences of the Santa Fe Townsite Company (meaning thereby the fences referred to in paragraph 1 of this petition) were again cut at that place last night after they had been repaired from previous devastation committed by the women (meaning thereby plaintiff's wife and others) of that section.' . . . 'The Santa Fe Townsite Company and the Kirby Lumber Company have not refused permission to these people to pass over their properties in order to get to the Santa Fe roundhouse; but they have objected to the cutting down of their fences and to the opening up of a public road without due process of law.' (Meaning thereby that the plaintiff, his wife and others without justification had been cutting down said fences and attempting to open up a public road without due process of law.)

" 'In describing his adventures around Silsbee, Weaver said that he concealed himself in the topmost branches of a tree; suddenly a band of nine women (meaning thereby plaintiff's wife and others) appeared on the scene, as he had expected, and began to assault the enclosure of the Santa Fe Townsite Company' (meaning thereby that plaintiff's wife and others began to cut and otherwise destroy the fences of the Santa Fe Townsite Company hereinbefore referred to).

"In the publication of the 11th day of September, 1906, is the statement signed by E. J. Eyres, treasurer Santa Fe Townsite Company, which said statement is set out in full in plaintiff's first amended original petition, and in which appears the following as set out in plaintiff's petition:

" 'While this matter of a public road was still in the court, certain residents of South Silsbee (meaning the plaintiff, his wife and others) most of whom, so far as known, being white women (meaning thereby plaintiff's wife and others) took it upon themselves to go out under cover of darkness and destroy the Santa Fe Townsite Company's fence (meaning thereby that this plaintiff and his wife and others, residents of South Silsbee, had committed a felony, to wit, the felony of fence-cutting by cutting and destroying the fence of the Santa Fe Townsite Company hereinbefore referred to in paragraph 1 of this petition, and meaning thereby to charge said felony was committed and said fences were cut by the same parties who were then defendants in a certain suit then pending in Hardin County and styled as follows: No. 1473, Santa Fe Townsite Company v. Joe Busby et al., in which suit this plaintiff and his wife were made defendants).

" 'The women (meaning thereby plaintiff's wife and others) were identified; and, while no southern man would willingly prosecute or persecute a woman for any crime she might commit, still the

officers of the law have a sworn duty to perform; and, if any of these women (meaning thereby plaintiff's wife and others) are prosecuted for having committed felony (meaning thereby that the wife of plaintiff and others had committed the felony of cutting fences) under the laws of their country, and that, too, under cover of darkness (meaning thereby plaintiff's wife and others had taken advantage of the darkness to conceal said crime) they will have no one to blame for it but themselves.' "

The petition after setting out in full the said articles, alleges as follows: "Plaintiff shows that he and his wife were the persons to whom the foregoing publications referred, and that all of said statements and publications were made by the defendants of and concerning the plaintiff and his wife; and in this connection plaintiff avers that the defendants and each of them had repeatedly made orally and by printed publications the statements contained in the foregoing articles or publications of and concerning the plaintiff and his wife and of and concerning certain nine women and their husbands, which included plaintiff's wife and himself; that the controversy giving rise to said oral statements and publications was between the said Santa Fe Townsite Company and its officers, as aforesaid, and the inhabitants of South Silsbee, and said oral statements and publications were made by the defendants of and concerning all the men and women living on the said South Silsbee site, consisting of about seventeen men and fifteen women, including the plaintiff and his wife; that there were nine men and their wives, including plaintiff and his wife, living in said South Silsbee, who were more prominent than the other inhabitants thereof in the controversy aforesaid with the Santa Fe Townsite Company, and said controversy or hostility between said Santa Fe Townsite Company and the inhabitants of South Silsbee was notorious and the relation thereto of plaintiff and his family, including his wife, and the defendants' special hostility towards plaintiff and his wife on account of the said controversy was notoriously known so that a great many individuals and the public generally, when reading said articles, readily understood and believed and knew that the same referred to plaintiff and his wife and that the defendants meant and intended thereby to refer to and direct the statements in said articles against the plaintiff and his wife and intended that it should be understood by the readers of said articles that the plaintiff and his wife were meant and referred to.

"That by said articles and publications the defendants intended and did charge the plaintiff and his wife with wilfully cutting the fence of another with the intent to injure the owner thereof, the same being a felony; and that plaintiff and his wife entered into an agreement together to commit the crime of fence cutting, a felony, and that the plaintiff and his wife committed a misdemeanor in that they did, knowingly, without the consent of the owner, cut down and destroy certain trees and timber belonging to the Houston Oil Company, a corporation, without its consent; and defendants did by said articles and statements charge and intend to charge that plaintiff is a coward and was guilty of the dastardly and disgraceful act of sending his wife out at night, unaccompanied by him, to commit

the crime of fence cutting, and that the plaintiff and his wife were lawless and violent persons, having no respect for the law of the land or for the rights of others, and that they were so regarded by lawful authorities of the country."

It is also alleged: "That the Santa Fe Townsite Company acted in all matters herein complained of through W. W. Fortenberry, E. J. Eyres and John Weaver, each and all of whom acted within their authority and duties as officers and agents of said Santa Fe Townsite Company; and further, plaintiff says that said Santa Fe Townsite Company authorized, adopted, ratified and confirmed all the acts in the premises of the said Fortenberry, Eyres and Weaver; and plaintiff says that on the 3d day of September, 1906, the said Santa Fe Townsite Company, acting through its attorneys, Dies, Singleton & Dies, and the said W. W. Fortenberry, filed its original petition in the suit No. 1473, entitled Santa Fe Townsite Company v. Joe Busby et al., in which all of the charges and statements contained in the articles and publications hereinbefore set out were adopted and reiterated, and the plaintiff herein and his wife were by said petition identified by name as being two of the parties charged by defendants with cutting the fences of said Santa Fe Townsite Company."

It is further alleged that neither plaintiff nor his wife were in any way connected with the cutting of defendants' fence as alleged in said publications, and said charges, insinuations and innuendos contained in said publications were "false, slanderous, libelous and contumacious."

Actual damages are asked in the sum of $12,000 and exemplary damages in the sum of $15,000.

The court below sustained a general demurrer to the petition and plaintiff declining to amend, his suit was dismissed.

While it was not necessary that the alleged libelous publications should have mentioned the name of the person intended to be libeled and a cause of action in favor of the person injured by such publication is shown when the circumstances alleged point to him as the person concerning whom the libelous statements in the publication are made, the petition in such case must allege facts from which it can be reasonably inferred that plaintiff was the person intended to be libeled. The rule is thus stated in 25 Cyc., 449: "The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. If the words used really contain no reflection upon any particular individual, no averment or innuendo can make them defamatory. An innuendo can not make the person certain which was uncertain before."

"An innuendo is not an averment of fact, but an inference of reasoning." 12 Ency. Pl. & Pr., 49.

The averment or innuendo that plaintiff was the person referred to will not make the petition sufficient unless the facts and circumstances alleged are such that the truth of the innuendo can be reasonably inferred therefrom.

The question is "whether the explanation given (by the innuendo) is a legitimate conclusion from the premises stated," and to determine

this question must be in all cases the exclusive province of the courts. 13 Pl. & Pr., 54.

Measured by these rules we think the petition in this case was insufficient and the trial judge did not err in sustaining the general demurrer.

Briefly summarized, the facts alleged upon which the innuendo is based are: The defamatory words published upon the face of the publication referred only to nine unnamed women, who resided in South Silsbee. Plaintiff and his wife resided in South Silsbee and were among the most prominent of the citizens of that place who opposed the construction and maintenance of the fence alleged in the publication to have been feloniously cut by nine women of said town. At the time mentioned in the publication fifteen women and seventeen men resided in South Silsbee. Plaintiff and his wife had nothing to do with the cutting of the fence.

It seems to us that these facts so far from sustaining, negative the conclusion that plaintiff or his wife was intended to be referred to in the alleged libelous publication.

There is no denial in the petition that the fence was cut as charged, nor that nine women of South Silsbee were engaged in its cutting, and upon the face of the publication the only persons referred to were the nine unnamed women who did the cutting. The fact that plaintiff was prominent among the thirty or more inhabitants of said town in opposing the construction of the fence could raise nothing more than a suspicion or surmise that he and his wife were referred to in said publication and can not be held to be any evidence of the fact that such publication did refer to them.

The further allegation that the statements made in the publication concerning plaintiff and his wife and all the men and women residing in South Silsbee were repeatedly made orally by each of the defendants, adds nothing to the sufficiency of the petition in this regard.

The allegation that subsequent to the first publication before set out, the defendant Townsite Company ratified and adopted the acts of their agents, defendants Fortenberry and Eyres, and in a suit brought by said company against Joe Busby et al., adopted and reiterated the charges before set out and made such charges against plaintiff and his wife by name, does not help the allegations upon which the innuendo is based. If the publication was not libelous no ratification on part of said defendant could make it so, and any allegation in the suit mentioned was privileged and would not sustain an action for libel.

A general demurrer only admits the truth of the facts pleaded and does not admit the truth of the inference or conclusion of the pleader based upon the facts alleged, unless the facts alleged are sufficient to authorize such inference or conclusion. Allegation in the petition in this case that the publication complained of was made concerning plaintiff being but a conclusion of the pleader from the facts and circumstances alleged, and such facts being insufficient to sustain or justify such conclusion as a reasonable inference therefrom, the demurrer was properly sustained. (Witham v. Atlanta Journal, 53 S. E., 106.)

The case of Schulze v. Jalonick, 29 S. W., 193, and 14 Texas Civ. App., 656, relied on by appellant, does not support his contention that the petition in this case is sufficient. In that case the petition charged libel upon a publication which stated that the plaintiff, Alvin Schulze, was the owner of a building in which an illegal business known as a "blind tiger" was conducted. The name of the plaintiff being thus connected with the unlawful business the averment or innuendo that the defendant intended by the publication to charge plaintiff with being engaged in the conduct of such business was a reasonable inference from the facts stated in the publication, and therefore the facts alleged in the petition were sufficient to sustain the innuendo.

Having reached the conclusion that the general demurrer was properly sustained, it follows that the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*

Writ of error refused.