Benjamin F. WRIGHT et al., Appellants,

v.

Max ROSENBAUM et al., Appellees.

No. 13193.

Court of Civil Appeals of Texas.

Houston.

March 2, 1961.

Rehearing Denied March 23, 1961.

Frank O. Barnes, Houston, for appellants.

Kemper & Kemper, W. L. Kemper, Melvin S. Cohn, Houston, for appellees.

BELL, Chief Justice.

The appellants, Benjamin F. Wright and wife, Ada Wright, Robert B. Bussey and wife, Christine Bussey, and Elmer L. Wright and wife, Beth Wright, brought suit against appellees, Max Rosenbaum and Reinhard Rosenbaum, doing business as Wayside Department Store No. 1, the action being for slander and for conversion of certain dresses. At the conclusion of all testimony the court sustained the motion of appellees to return a verdict in their favor against appellants. Thereafter in response to appellees' motion for judgment on the verdict, the court rendered judgment that appellants take nothing. Thereafter, and before the judgment became final, appellees filed a motion asking the court to correct the judgment by rendering judgment for appellants, Benjamin F. Wright and wife, Ada Wright, for $19.90, the value of the dresses alleged to have been converted. In such motion judgment in this respect was confessed by appellees. The final judgment in the case was thus rendered in favor of appellees as to the suit for slander, but in favor of the two named appellants as to the value of the dresses converted. This latter judgment was rendered because the trial court and appellees in their motion for a directed verdict, apparently overlooked the fact that the suit was for damages because of slander and conversion of the dresses, and, that while no case of slander was established, a case of conversion was prima facie established.

Appellants' petition alleges that appellant Ada Wright, on December 27, 1955, went to appellees' store to exchange two dresses that had been given her, one by her son and one by her daughter. She was accompanied by her daughter, Beulah Wright, and Mrs. Bussey and her daughter-in-law, Mrs. Beth Wright. Mrs. Ada Wright delivered the dresses and finding nothing for which they might be exchanged that would fit her, she asked for a refund. Being advised that it was against store policy to make refunds, she agreed to accept from Max Rosebaum a due bill. While the due bill was being made out an employee notified Max Rosebaum that a dress was missing from a rack in the store. Then Max Rosenbaum turned to Mrs. Ada Wright, Miss Beulah Wright and Mrs. Bussey and stated that "one of them" had taken the dress and he would not give a due bill until it was returned. Upon denial by each, Mr. Rosenbaum stated, "if it wasn't them" it must be the "one who left the store." Mrs. Beth Wright was seated in the automobile in front of the store. One of appellants got Mrs. Beth Wright to come into the store. She, on being informed of what Mr. Rosenbaum had said, denied having taken the dress. Rosenbaum then stated, "One of you has stolen this dress, and I don't know which one, but I know it was one of you, and I am not going to return your dress to you (meaning to plaintiff, Mrs. Ada Wright) unless you produce the dress." Appellants agreed to be searched. Mr. Rosenbaum, addressing his remarks to plaintiff Mrs. Ada Wright, Mrs. Christine Bussey and Mrs. Beth Wright, stated: "I don't care what you say or do, I know that one of you took the dress, and if you don't give it back I am going to hold you (meaning plaintiff Mrs. Ada Wright) responsible for the cost of the dress."

Following the above allegations of the alleged slanderous words are allegations of publication to persons in the store who could easily hear the words; that the words were false but were maliciously spoken

for the purpose of injuring appellants' character and reputation and for the purpose of converting the dresses to appellees' benefit. The value of the dresses was alleged to be $19.90. Specifically it was alleged that each of the appellants was damaged $5,000 by reason of damage to their reputation and by reason of their being humiliated. Additionally, Mrs. Beth Wright claimed $5,000 because of injury to her health. The specific prayer is that Mrs. Ada Wright and husband recover $5,019.90; that Mrs. Bussey and husband recover $5,000 and that Mrs. Beth Wright and husband recover $10,000. There is a general prayer for relief.

We need not go into all of the facts and circumstances as shown by the evidence, but will notice only such details of the testimony as are material to the disposition of the appeal. The circumstances under which the statements were made are substantially as alleged.

Mrs. Christine Bussey, who was with Mrs. Ada Wright, testified that Beulah Wright was with them when the dress was missed. Mrs. Beth Wright had gone to the automobile as she was ill. Mrs. Darling, a saleslady, was waiting on the others. An agreement had been made to give a due bill, but Mr. Rosenbaum had not made it out when Mrs. Darling told him a dress was missing and handed him the belt to the missing dress. Mr. Rosenbaum, addressing Mrs. Ada Wright, stated he could not give a due bill as a dress was missing but if the dress was produced he would give a due bill. He told her "one of our party had taken the dress." He said, "the dress was there in the store and that one of us four ladies had stolen the dress." Mrs. Darling was standing beside him. There were various customers around there. She thought everyone stopped and looked at her. She denied having the dress as did Beulah and her mother. Mrs. Darling said "apparently one of us ladies must have taken the dress." Beth Wright returned to the store and denied taking the dress. He said he would just keep the dresses to cover the missing

one. Without quoting further, it suffices to say that throughout her testimony Mrs. Bussy testified Mr. Rosenbaum stated "one of the four ladies" must have taken the dress.

Mrs. Ada Wright testified Mr. Rosenbaum said "one of us in our group had stolen the dress and he was going to hold me responsible whether I had it or not." He stated he was going to hold the dresses the witness had returned. He never returned the dresses. The only due bill given was to deduct from the value of the dresses returned the value of that missing.

■ The testimony of the foregoing two witnesses is all that was brought forward. We have greatly condensed their testimony. The effect of their testimony is to raise a fact issue as to the conversion of the dresses. On the question of the slanderous language, the effect of the testimony is only to establish prima facie that Max Rosenbaum stated, "one of the four ladies" took the missing dress.

Appellants first contend the trial court erred in instructing a verdict, because even though no slander was proven (which they do not concede) a case of conversion was shown as to Mrs. Ada Wright's two dresses. Their attack in this resepct is twofold. First, they say a fact issue as to the conversion was shown, which would be a jury issue. Second, they say that while in the final judgment Mrs. Ada Wright recovered the value of the dresses, there was left the issue as to exemplary damages.

■ The Trial Court erred in instructing a verdict as to the whole case because the evidence prima facie established a conversion of the dresses and under the evidence and pleading Mrs. Ada Wright would be entitled to recover the value of the dresses. An instructed verdict, of course, is not proper where there is any fact issue made by the pleadings and evidence which, if answered favorably to plaintiff, would authorize a recovery. However, here the error was rendered harmless by the action of the

Court in subsequently entering a corrected judgment giving Mrs. Ada Wright recovery of the value of the dresses. She got all she was entitled to by the final judgment on the cause of action for conversion, at least as to actual damages asserted by her, so she is in no position to complain. She, on trial to a jury with answers favorable to her, could recover nothing more than she did under the court's judgment.

■ Appellants say, however, the court having rendered judgment on the instructed verdict as to the whole case, it had no authority to change the judgment. Under the facts here presented, we are unable to agree. The judgment rendered had not become final. Before it became final the court had the power to correct it so as to allow Mrs. Ada Wright recovery of all she was entitled to under the pleadings and evidence, so long as the party who is adversely affected does not complain. Here appellees, who were adversely affected, asked that the judgment be thus entered, thereby in writing confessing judgment.

The second attack made by appellants is that on the cause of action for conversion there was an issue made as to exemplary damages that should have gone to the jury and for which the judgment allowed no recovery. Their position is that they pled appellees' acts were maliciously done for the purpose of effecting a conversion of the dresses. The petition of appellants does make this allegation. However, we are of the view that appellants' pleadings did not seek recovery of exemplary damages. We have studied the pleadings and nowhere find any mention of exemplary damages. There is a careful allegation of actual damages and the amount suffered by each plaintiff is alleged and specifically prayed for. However, there is no such pleading of or prayer for exemplary damages. The prayer for actual damages for Mrs. Ada Wright specifically includes the $19.90 value of the dresses but nowhere is an intent shown that she was also seeking punitive damages.

Appellants' real complaint is that the trial court in instructing a verdict for appellees held that the words used by Max Rosenbaum as alleged in the petition and proven by appellants' testimony did not as a matter of law amount to a slander of any of the appellants.

Appellants contend that since the evidence showed Max Rosenbaum stated that "One of the four ladies" had stolen the dress this, standing alone, was a charge of theft against each of them. Though we used the expression "One of the four ladies" had stolen the dress, we would note there were slightly varying expressions by the witnesses as to exactly how the statement was put by Mr. Rosenbaum, but they all amount to the same thing, that is, he did not know which one but one of the ladies had stolen the dress. There is no colloquium alleged by any of appellants by which it is contended Rosenbaum had particular reference to any of appellants as distinguished from the others of them. In other words, appellants must stand or fall on the words used.

Appellees contend that since (assuming the statement was made) the statement was a charge in the alternative, it was no charge against any of appellants. At the most it was, they say, a charge that some member of a group, not all members of the group, had stolen the dress and this is no charge against any particular one of them and cannot be so understood by the average hearer.

There is a conflict of authority among the various states. We will not discuss or cite the cases, but annotations may be found in 23 L.R.A.,N.S., 726 and 97 A.L.R. 281. The majority rule seems to be that if slanerous words are used, directed impersonally against an undesignated portion of a group, they are not slanderous of any particular person. Or, what amounts to the same thing, if there is a charge against persons in the alternative, such as A or B, one, committed a certain crime, neither can sue

because neither is charged with a crime. Prosser, Law of Torts, 2nd Ed., p. 584.

We feel the law in Texas is established by the cases of Harris v. Santa Fe Townsite Co., 58 Tex.Civ.App. 506, 125 S.W. 77, writ den.; and Bull v. Collins, Tex.Civ.App., 54 S.W.2d 870, no writ hist. (noted in 46 Harvard Law Rev. 1033), and that under these authorities appellants neither alleged nor proved a cause of action for slander and the Trial Court, therefore, correctly instructed a verdict as to this cause of action.

In the case of Harris v. Santa Fe Townsite Co., supra, the defendants had charged that nine women of a certain subdivision had been guilty of cutting a certain fence. There were 16 women who lived in the subdivision. By colloquium, plaintiff and his wife had alleged they were among the leaders in complaining of the fence and seeking to obtain its removal so there would be access from the subdivision where they lived to the town of Silsbee and the publication making the charge had reference to them and it would so be understood by the average reader. A general demurrer was sustained to the petition and this action was sustained by the Court of Civil Appeals. The Court said [58 Tex.Civ.App. 506, 125 S.W. 79]:

> "While it was not necessary that the alleged libelous publications should have mentioned the name of the person intended to be libeled, and a cause of action in favor of the person injured by such publication is shown when the circumstances alleged point to him as the person concerning whom the libelous statements in the publication are made, the petition in such case must allege facts from which it can be reasonably inferred that plaintiff was the person intended to be libeled. The rule is thus stated in 25 Cyc. 449: 'The defamatory words must refer to some ascertained or ascertainable person and that person must be the plaintiff. If the words used really contain no reflection upon any particular individual, no averment or innuendo can make them defamatory. An innuendo cannot make the person certain which was uncertain before.' 'An innuendo is not an averment of fact, but an inference of reasoning.' 12 Ency.Pl. & Pr. 49. The averment or innuendo that plaintiff was the person referred to will not make the petition sufficient unless the facts and circumstances alleged are such that the truth of the innuendo can be reasonably inferred therefrom. The question is 'whether the explanation given (by the innuendo) is a legitimate conclusion from the premises stated,' and to determine this question must be in all cases the exclusive province of the courts. 13 Pl. & Pr. 54. Measured by these rules, we think the petition in this case was insufficient, and the trial judge did not err in sustaining the general demurrer.

> "Briefly summarized, the facts alleged upon which the innuendo is based are: The defamatory words published upon the face of the publication referred only to nine unnamed women who resided in South Silsbee. Plaintiff and his wife resided in South Silsbee, and were among the most prominent of the citizens of that place who opposed the construction and maintenance of the fence alleged in the publication to have been feloniously cut by nine women of said town. At the time mentioned in the publication 15 women and 17 men resided in South Silsbee. Plaintiff and his wife had nothing to do with the cutting of the fence. It seems to us that these facts so far from sustaining negative the conclusion that plaintiff or his wife was intended to be referred to in the alleged libelous publication. There is no denial in the petition that the fence was cut as charged, nor that nine women of South Silsbee were engaged in its cutting, and upon the face of the publication the only persons referred to were the nine unnamed wom-

en who did the cutting. The fact that plaintiff was prominent among the 30 or more inhabitants of said town in opposing the construction of the fence could raise nothing more than a suspicion or surmise that he and his wife were referred to in said publication, and cannot be held to be any evidence of the fact that such publication did refer to them."

In the case of Bull v. Collins, supra, an employer had charged that some money had been stolen by either one of two named employees. In suit by one of them for slander, the trial court, after this charge in the alternative was proven, instructed the verdict for the defendant. In affirming this action, the Court of Civil Appeals on this point said [54 S.W.2d 871]:

"From the above statement of the pleading and the evidence it appears, we think, that there was no evidence to show that the defendant accused the plaintiff of the theft of, the money. Words importing an accusation that either A or B stole money, without indicating whether the one or the other, are not sufficient to charge that A stole the money. The clear implication of the language is that both did not steal it. There would be no more warrant for saying in such a case that A stole it than that B stole it. If the pleading can be held to allege slander, then it must be by construing the defamatory words to mean that A stole the money. The proof must be to the same effect. If the proof, while plainly implying that both A and B did not steal the money, indicates no more that it was A than that it was B, it simply fails to support the allegation. The controlling principle is correctly stated, we think, in Corpus Juris, as follows: 'Words spoken of one of two plaintiffs will not support an averment spoken of both plaintiffs.' 37 C.J. p. 68. The defamatory words in question can admit of no other construction than that, if they were spoken concerning

Bull, they were just as certainly also spoken concerning Morrison. The proof offered simply failed to show that they were spoken of the plaintiff or any other particular person."

We specifically notice only, one case cited by appellants. The others cited by them are from other states and in nowise involve Texas law. They will be found in the annotations we have referred to.

In the case of Neiman-Marcus v. Lait, D.C., 13 F.R.D. 311, cited by appellants, a suit was filed by various models, salesmen and sales ladies, alleging they were libelled by Lait in his book, "U. S. A. Confidential". The conduct charged was not levelled at any particular person in these groups but in the case of the models was that "some" of them were call girls. Further, it was alleged "most" of the salesmen were fairies. The suit was filed in the United States District Court in New York. A motion to dismiss on the ground that no cause of action was stated was filed. The court overruled the motion except as to the saleswomen. There is, in the opinion, a review of the various authorities in the United States. The court merely held that under the law of New York and some other states recovery could be had and the plaintiffs had not yet been put to a choice of law. It noted Texas had apparently not passed on the question and made no' notice of the two cases on which we rely.

We, however, deem the principles announced in the two cited Texas cases applicable to the case before us.

■ Appellees filed a motion to strike the Statement of Facts because it was only a partial one, and alternatively moved to have the balance of the evidence brought up. We ordered the motions carried with the case. A partial statement of facts is. contemplated by the Rules of Civil Procedure. Rule 377, T.R.C.P. If additional facts are required, they may be brought forward as provided in Rules 377, 428 and 429, T.R.C.P. The fact that there is only a partial statement of facts is no grounds.

for striking, Therefore, this part of the motion is overruled.

We deem the portion of the evidence brought up by appellants sufficient for a review of the questions presented on appeal and therefore overrule the motion to supplement the statement of facts.

The judgment of the Trial Court is affirmed.

Judgment rendered.

COLEMAN, J., not sitting.