**Gregory ESKEW, et al., Appellants,**

v.

**PLANTATION FOODS, INC.,
et al., Appellees.**

No. 10–95–015–CV.

Court of Appeals of Texas,
Waco.

Aug. 31, 1995.

Danny Wash, Wash & Thomas, Waco, for appellants.

Pat Beard, Beard & Kultgen, Waco, Jay W. Hurst & John T. Banks, Hurst & Wade, Austin, for appellees.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

**OPINION**

THOMAS, Chief Justice.

Plantation Foods, Inc. began an investigation into irregularities in its maintenance department, which ultimately resulted in the termination of Gregory Eskew, Gary Eskew, Guy Eskew, and several other maintenance employees. The Eskews sued Plantation Foods and its chief executive officer, Roane Lacy, Jr., for defamation after the Waco Tribune–Herald published an article

containing these statements by Lacy: "[I]rregularities in the company's maintenance department prompted personnel changes.... Everyday we hire people, let people go and people quit.... I don't want to take the chance of coloring the innocent with any kind of accusation. *I don't think everyone we let go had something to do with this. But some of those we let go, we think, were involved.*" (Emphasis added). Although they were not named in the article, the Eskews alleged that anyone knowing them would be aware that the article referred to them. However, the court granted Plantation Foods and Lacy a take-nothing summary judgment on the ground that the Eskews have no defamation action as a matter of law because they are members of a group and only an unidentified portion of the group is accused of wrongdoing.[1] We will affirm.

The Texas decisions that have expressly addressed the issue follow the rule that a member of a group has no cause of action for a defamatory statement directed to some or less than all of the group when there is nothing to single out the plaintiff. *Wright v. Rosenbaum*, 344 S.W.2d 228 (Tex.Civ.App.—Houston 1961, no writ) (stating that one of four women stole a dress and not naming the guilty person); *Bull v. Collins*, 54 S.W.2d 870 (Tex.Civ.App.—Eastland 1932, no writ) (stating that either A or B stole the money without specifying the guilty party); *Harris v. Santa Fe Townsite Co.*, 125 S.W. 77 (Tex.Civ.App.—1910, writ ref'd) (stating that an unnamed "band of nine women" from South Silsbee cut a fence, when fifteen women lived in South Silsbee).[2] These decisions, which Plantation Foods and Lacy cite in support of their summary judgment, align Texas with the majority of the states whose courts have considered the matter. *See* Debra T. Landis, Annotation, *Defamation of Class or Group as Actionable By Individual Member*, 52 A.L.R.4th GROUP DEFAMATION 618, 638–40 (1987).

Lacy's statement—which was, essentially, "I think that some but not all of the people we terminated today were involved in the irregularities in our maintenance department"—did not single out the Eskews as wrongdoers or malign the entire group of persons terminated. His statement clearly falls within the majority rule embodied in the three decisions highlighted above.

The Eskews rely on four cases to support their contention that they are entitled to sue for defamation. *See Galveston County Fair & Rodeo v. Glover*, 880 S.W.2d 112 (Tex. App.—Texarkana 1994, no writ); *Jacobs v. McIlvain*, 759 S.W.2d 467 (Tex.App.—Houston [14th Dist.] 1988), *rev'd on other grounds*, 794 S.W.2d 14 (Tex.1990); *Sellards v. Express–News Corp.*, 702 S.W.2d 677 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.); *Outlet Co. v. Intern. Sec. Group*, 693 S.W.2d 621 (Tex.App.—San Antonio 1985, writ ref'd n.r.e in part, dism'd in part).

Unlike the authority cited by Plantation Foods and Lacy, only one of the cases relied on by the Eskews expressly discusses the law as it relates to group defamation. In *Sellards*, a newspaper reporter wrote three articles concerning a one-car accident in which the driver and one passenger were killed and two passengers were seriously injured. *Sellards*, 702 S.W.2d at 678. Darlene Demarais, one of the injured passengers, was identified in the second article as one of the victims. Two of the articles referred to drug use by one or more occupants of the car, and the first article stated that police had twice reported that "the terrifying smashup that destroyed the car was a drug-induced suicide but offered no details." *Id.* The court first ruled that the statements were ambiguous,

---

**1.** The court also granted a summary judgment on the Eskews' action for "false light invasion of privacy." Texas does not recognize such a cause of action. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 584 (Tex.1994). Accordingly, without discussion, we will overrule the Eskews' third point attacking the summary judgment on this ground.

**2.** *Harris*, the earliest Texas case, predicated its holding on a basic rule of defamation law: "The defamatory words must refer to some ascertained or ascertainable person and that person must be the plaintiff." *Harris v. Santa Fe Townsite Co.*, 125 S.W. 77, 79–80 (Tex.Civ.App.—1910, writ ref'd). The Texas Supreme Court later acknowledged this most basic rule in *Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W.2d 890, 893 (1960), and cited the decision in *Harris* as authority.

which precluded a summary judgment for the defendants, and then held:

> Though the article did not specifically state Demarais was involved in drugs or suicide, the statement, as written, could be taken to refer to *any or all of the passengers.* When a group is named and the plaintiff is a readily identifiable member of the group, a cause of action for defamation exists if those who know and are acquainted with the plaintiff understand the article refers to the plaintiff.

*Id.* at 679, 680 (emphasis added). Clearly, the court treated the defamatory statements as being directed at the entire group—the driver and all the passengers—rather than to a part of the group.

Those facts and the legal conclusion reached by the *Sellards* court are wholly inapposite to the facts here. Lacy's statement did not malign the entire group and is clearly referable only to an unidentified portion of a group. *Sellards* is not relevant authority.

Likewise, the facts and ruling in *Glover* are inapposite. The Galveston County Fair disqualified Eric Glover's reserve grand champion steer because it had been "aired up," *i.e.,* someone had injected air under its skin to hide any conformation flaws. *Glover,* 880 S.W.2d at 115. Prior to disqualifying the steer, Fair officials had held a press conference to announce that "certain steers" were under investigation. *Id.* However, the Glovers' names were never released to the public, either at the press conference or later when Eric's steer was formally disqualified. *Id.* The appellate court ruled that the evidence was sufficient to support a finding of defamation even though the Fair had never released or mentioned the Glovers' names to the public. *Id.* at 119–20.

The act of disqualifying the reserve grand champion steer clearly singled out the Glovers from a nondescript group of owners whose steers were "under investigation." There was only one reserve grand champion steer disqualified, and that animal belonged to Eric Glover. Essentially, the question in *Glover* was whether the Glovers had been defamed when they had been singled out from the group by the disqualification but

had never been specifically named. Again, that is not the question presented by the facts here. Lacy's statement did not single out the Eskews or any other person from the group. The act of terminating Plantation Foods' maintenance employees merely defined the group; it did not make Lacy's statement referable to the entire group.

The facts and holding in *Outlet Co.* are also inapposite. A San Antonio TV reporter stated that police were investigating a gun-smuggling operation conducted by International Security Group, an elite security business. *Outlet Co.,* 693 S.W.2d at 625. The reporter mentioned that Richard Medlin, the company's sole stockholder and president, denied the charges. *Id.* In response to a contention by the reporter and his station that the broadcasts were not "of and concerning" Medlin, the court ruled that the defamation was directed at Medlin because he was known to be the company's president and owner. *Id.* at 626. Essentially, the court held that the defamatory statements, which mentioned Medlin's company by name, were sufficient to direct the statements at him.

Finally, in *Jacobs,* a Houston TV newscaster reported that "four payroll employees were used, on city time, to care for the elderly father of Emerick Jacobs, the manager of [the city's] water department maintenance division." *Jacobs,* 759 S.W.2d at 468. Jacobs and Joyce Moore, apparently one of the maintenance employees, sued the reporter and his station for defamation. Omitting any discussion of the law as it relates to defamation of a group or part of a group, the appellate court reversed a summary judgment that had been rendered in favor of the defendants after concluding that fact issues existed on whether the statement was truthful and on whether the statement was "of or concerning" Joyce Moore. *Id.* at 469. The court noted that Moore had produced evidence "that several acquaintances understood her to be a subject of the story" and held that it was not necessary for her to be identified by name to be defamed. *Id.* However, the Texas Supreme Court reversed the judgment of the court of appeals on the ground that the reporter's statement was substan-

tially true and thus was not libelous as a matter of law. *McIlvain,* 794 S.W.2d at 16.

To the extent that the court of appeals' opinion in *Jacobs* can be interpreted as relevant authority for the Eskews' contention that they were defamed by Lacy's statement, we reject any such interpretation in favor of the clear-cut rulings in the three cases supporting the granting of the summary judgment in favor of Plantation Foods and Lacy. Holding otherwise would place this court in the position of adopting the minority rule, which we reject as inconsistent with the basic rule pronounced by the Supreme Court— "The rule in this and other jurisdictions is that the asserted libel must refer to some ascertained or ascertainable person, and that person must be the plaintiff." *See Newspapers, Inc. v. Matthews,* 161 Tex. 284, 339 S.W.2d 890, 893 (1960).

We overrule all three points asserted by the Eskews and affirm the summary judgment.