DELTA AIR LINES, INC., Appellant,

v.

Robert A. NORRIS, et al., Appellees.

No. 10–96–280–CV.

Court of Appeals of Texas,
Waco.

July 2, 1997.

John H. Martin, G. Luke Ashley, Laura Peterson Elkind, Lisa A. Schumacher, Thompson & Knight, P.C., Dallas, W. Burton Baker, Jr., Lummus, Hallman, Pritchard & Baker, P.C., Cleburne, for appellant.

David E. Keltner, John S. Jose, Karen S. Preccella, Jose, Henry, Brantley & Keltner, L.L.P., Fort Worth, John R. MacLean, Dan Boulware, MacLean & Boulware, Cleburne, Kathryn J. Gilliam, Beard & Kultgen, Waco, for appellees.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Delta Air Lines, Inc. ("Delta") filed an interlocutory appeal from the denial of its summary-judgment motion based in part on constitutional rights of free speech. U.S. CONST. amend. I; TEXAS CONST. art. I, § 8. Statements by Delta's representatives were published by the print media, which brings the appeal within the purview of section 51.014(6) of the Texas Civil Practice and Remedies Code. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(6) (Vernon Supp.1997).

In May 1993, Delta and Norris Industries, Inc. ("NI"), owned by Robert A. Norris ("Norris"), signed a "Baggage and Mail Handling Agreement" under which NI would supply labor to Delta's operations at the DFW Airport. During the term of the contract, the United States Postal Service began to suspect that some of NI's employees were stealing from the mail and started an investigation. On January 28, 1995, the Postal Inspection Service, the Secret Service, the Immigration and Naturalization Service, and the Texas Department of Public Safety conducted an armed raid at the Delta mail facility parking lot and searched and detained several of NI's employees. On January 30, Delta's representatives met with Postal Service inspectors. The following day, Delta gave notice to NI that the contract would be terminated thirty days later, a contractual option available to either party.

## THE STATEMENTS

The print media became interested in the investigation and, during the course of its inquiries, called upon Delta to comment. Delta representatives made the following statements which form the basis of this dispute: [1]

- Bill Berry was quoted in the *Fort Worth Star–Telegram* on February 10, 1995, in the following paragraph:

  Delta spokesman Bill Berry said the contract was canceled "for failure to meet our standards under the contractual agreement." He declined to go into detail.

- *The Dallas Morning News*, in an article published on February 11, 1995, quoted another Delta representative:

  "The contract was canceled because they failed to meet the high standards Delta requires," said spokeswoman Jackie Pate. "Delta is intolerant of any action on the part of our employers or contractors that involves illegal acts."

- A story in *DFW People*, an airport newsletter, dated February 16, 1995, contained the following:

  Michael Boynton, district director of sales for Delta, would only say that Norris "failed to meet our standards under the contractual agreement."

Norris asserts three causes of actions based on Delta's statements, and NI asserts one. Norris claims that he was defamed and suffered from intentional infliction of emotional distress. Both claim irreparable damage to their business reputations.

## DELTA'S MOTION FOR SUMMARY JUDGMENT

Delta moved for summary judgment on three causes of action, asserting (1) that the claims for defamation and business disparagement must fail because the alleged statements were either "non-defamatory or non-actionable statements of opinion" protected by free-speech rights; (2) alternatively, that

the statements were substantially true; and (3) that Norris' claim for intentional infliction of emotional distress fails because (a) the statements were not defamatory, (b) Delta did not engage in "extreme and outrageous conduct," or (c) Norris did not suffer "extreme emotional distress."

Norris' and NI's response to the motion for summary judgment contends that the statements attributable to Berry, Pate, and Boynton are defamatory and are statements of fact, not of opinion. They further contend that the statements were "admittedly and utterly false." [2] The response also contests Delta's assertions about intentional infliction of emotional distress.

## STANDARD OF REVIEW

■ The standards for reviewing a summary judgment are well established. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to the summary judgment as a matter of law. *Id.* at 548–49. The reviewing court must accept all evidence favorable to the non-movant as true. *Id.* at 549. Every reasonable inference must be indulged in favor of the non-movant and all doubts resolved in its favor. *Id.* A defendant may establish an affirmative defense by proving all of the elements of the affirmative defense as a matter of law, demonstrating that there is no genuine issue of material fact. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). Review of the denial of a motion for summary judgment is governed by the same standard as governs review of the granting of such a motion. *San Antonio Express News v. Dracos*, 922 S.W.2d 242, 247 (Tex.App.—San Antonio 1996, no writ). And, the standard is the same for defamation cases as other summary judgment cases. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989).

1. Delta does not dispute that its representatives made the statements which were published. The basis for Norris' suit is, of course, the original statements.

2. The parties also disagree about several other issues, including whether Norris is a "public figure," which we do not reach.

## DEFAMATION

██ "Ordinary citizens" enjoy the same constitutional protections as members of the broadcast and print media when sued for defamation. *See id.* (public figure sued private defendant). A private individual may recover damages from the publisher of a defamatory falsehood as compensation for actual injury upon a showing that the publisher knew or should have known that the defamatory statement was false. *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 819 (Tex.1976).

██ Defamation may occur through libel, which is written defamation and has been defined by section 73.001 of the Civil Practice and Remedies Code, or through slander, the spoken form, which is recognized at common law but has not been codified in Texas. *See Cain v. Hearst Corp.,* 878 S.W.2d 577, 580 (Tex.1994); TEX.CIV.PRAC. & REM.CODE ANN. § 73.001 (Vernon 1986). A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury. *Einhorn v. LaChance,* 823 S.W.2d 405, 410–11 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.).

██ "All assertions of opinion are protected by the first amendment of the United States Constitution and article I, section 8 of the Texas Constitution." *Carr v. Brasher,* 776 S.W.2d 567, 570 (Tex.1989). Whether a statement is an opinion or an assertion of fact is a question of law. *Id.* (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974)).

██ Whether words are capable of the defamatory meaning the plaintiff attributes to them is also a question of law. *Musser v. Smith Protective Serv., Inc.,* 723 S.W.2d 653, 654–55 (Tex.1987). In reaching a conclusion, the court must construe the allegedly defamatory statements as a whole, in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Carr,* 776 S.W.2d at 570 (discussing *Musser* ). Only when the court determines the language to be ambiguous or of doubtful import should a jury be permitted to determine the statement's meaning and the effect the statement has on the ordinary person. *Id.*

██ The truth or falsity of statements is determined by using the "substantial truth" test. *Rogers v. Dallas Morning News, Inc.,* 889 S.W.2d 467, 472 (Tex.App.—Dallas 1994, writ denied) (citing *McIlvain v. Jacobs,* 794 S.W.2d 14, 15 (Tex.1990)). Under that test, we examine each statement in question, in its entirety, and decide whether the summary-judgment record conclusively shows that the "gist" of the statement is substantially true. *See id.* This evaluation requires us to determine whether, in the mind of the average person who heard the statement, an allegedly defamatory statement was more damaging to the plaintiffs' reputation than a truthful statement would have been. *See id.* If we decide, as a matter of law, that a statement is substantially true, our inquiry ends. *See id.*

## ARE THE STATEMENTS ACTIONABLE?

The statements that Norris and NI rely upon fall into three categories: two assert that NI did not meet Delta's standards under the contract, one asserts that NI failed to meet Delta's *high* standards under the contract, and one asserts that Delta is intolerant of any illegal action by parties with which it contracts.

According to Norris and NI, Delta knew of some theft problems and had asked NI to cooperate with the postal inspectors' investigation. Despite this knowledge, Delta had been satisfied with NI's performance under the terms of the contract. Thus, Norris and NI argue that Delta's statements that NI did not meet Delta's contractual "standards" or "high standards" are false. They argue that Delta used NI as a "scapegoat" to avoid losing a lucrative contract with the U.S. Postal Service.

Delta asserts that, although it was aware of some theft problems, it did not know the vast extent of those problems until the January 28 raid and its January 30 meeting with

postal inspectors.[3] With this knowledge, Delta asserts that NI did not meet its standards, despite any prior satisfaction with NI's performance.

■ We believe that the statements in the first two categories—that NI did not meet Delta's contractual standards—are non-specific statements lacking a defamatory meaning. *Einhorn,* 823 S.W.2d at 411 (statement that plaintiff was fired for reasons related "solely to work performance" not defamatory). The statements were made in the wake of a criminal investigation that had discovered substantial criminal activity on the part of NI's employees, yet only mentioned failure to abide by the contract. Alternatively, considered as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive them, the statements were substantially true. *See Rogers,* 889 S.W.2d at 472.

Jackie Pate's statement that Delta is intolerant of "illegal acts" by its employees and contractors is of a different nature. Delta points out that the statement does not directly refer to Norris or NI, so it cannot meet the requirement that a defamatory statement must "contain a false statement of fact about [the] plaintiff." Norris and NI contend that the statement, in context, necessarily implies that they or their employees engaged in illegal conduct and, thus, is defamatory. Delta says if the statement implies such about the plaintiffs, then it is substantially true. Delta also says that the statement is one of opinion, not fact.

■ If we accept Norris' and NI's contention that the statement refers to them by implication, we must examine the summary-judgment record to determine whether it shows that the statement is substantially true. It is undisputed that NI employees engaged in illegal conduct. Norris and N.I. assert, however, that Delta had tolerated illegal conduct in the past and thus Pate's assertions to the contrary are false. Whether or not Delta had previously tolerated illegal conduct does not make the statement defam-

atory towards NI. We believe that the summary-judgment record conclusively shows that the statement, if and as applied to the plaintiffs, is substantially true. *Id.* If we accept the view that the statement does not refer to the plaintiffs by implication, then it is not actionable because it does not contain a false statement *about the plaintiffs. See Eskew v. Plantation Foods, Inc.,* 905 S.W.2d 461, 462 n. 2 (Tex.App.—Waco 1995, no writ) (citing *Harris v. Santa Fe Townsite Co.,* 58 Tex.Civ.App. 506, 125 S.W. 77, 80 (1910, writ ref'd)).

Because we have found that the statements sued upon were either not defamatory or were substantially true, we will reverse the denial of Delta's motion for summary judgment on Norris' and NI's causes of action for defamation and render a partial summary judgment that they take nothing on those claims.

## BUSINESS DISPARAGEMENT

■ Non-defamatory statements will not support a claim for business disparagement. *Hurlbut v. Gulf Atlantic Life Ins. Co.,* 749 S.W.2d 762, 766 (Tex.1987) (both defamation and business disparagement involve the imposition of liability for injury sustained through publications to third parties of a false statement affecting the plaintiff; the former protects the personal reputation of the plaintiff, the latter protects economic interests). The parties appear to agree on this general proposition of law. Having found that the statements made by Delta's representatives were not defamatory or were substantially true, we will also reverse the denial of Delta's motion for summary judgment on Norris' and NI's causes of action for business disparagement and render a partial summary judgment that they take nothing on those claims.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ The elements of Norris' claim that Delta's representatives' statements intentionally inflicted emotional distress are: (1) Del-

---

**3.** Postal inspectors estimated the losses from stolen credit cards and merchandise at over two million dollars.

ta's representatives acted intentionally or recklessly; (2) their conduct was extreme and outrageous; (3) the statements caused Norris emotional distress; and (4) his emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993). Delta asserts that the summary-judgment evidence negates the second and fourth elements. We agree as to element number two and need not consider number four.

■■■ In adopting the tort of intentional infliction of emotional distress in *Twyman,* the Supreme Court said that liability for outrageous conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 621 (citing the comment to the Restatement (Second) of Torts, § 46 (1965)). Whether Delta's conduct may reasonably be regarded as extreme and outrageous is for the court to determine in the first instance, *i.e.,* a question of law. *See Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993) Thus, the question is whether the summary-judgment evidence shows that Delta did not act "outrageously" as a matter of law. *See Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991).

■■■ Accepting all evidence favorable to Norris as true, we conclude that, as a matter of law, neither Delta nor its representatives engaged in extreme and outrageous conduct. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). Delta's statements were made in the course of responding to press inquires concerning a law-enforcement investigation of wrongdoing involving a matter of wide public interest, *i.e.,* the security of the mail. The responses do not lie "beyond all possible bounds of decency," are not "atrocious," nor "utterly intolerable in a civilized community"; rather, Delta's representatives exercised sound discretion in carrying out the public-relations function incident to the operation of a business organization. *See id.*

Having found that the statements made by Delta's representatives were not "outrageous" as a matter of law, we will also reverse the denial of Delta's motion for summary judgment on Norris' cause of action for intentional infliction of emotional distress and render a partial summary judgment that he take nothing on that claim.

## AUTHORITY TO REVIEW OTHER GROUNDS ON WHICH MOTION FOR SUMMARY JUDGMENT WAS DENIED

In addition to the claims we have discussed, NI's pleadings asserted claims of breach of contract, breach of an implied covenant of good faith and fair dealing, and tortious interference with its contractual employment relationships. Delta's motion for summary judgment attacked these claims, but on grounds other than free-speech. We must initially determine whether we have the authority to review the court's denial of Delta's motion for summary judgment on these claims, in view of NI's contention that section 51.014(6) is limited to *claims* denied in whole or in part on free speech grounds.[4] *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(6).

■■■ We begin with the fundamental proposition that we do not have jurisdiction over interlocutory orders absent a grant from the legislature. *See New York Underwriters Ins. Co. v. Sanchez,* 799 S.W.2d 677, 678–79 (Tex.1990). Generally, the denial of a motion for summary judgment is an interlocutory order not reviewable on appeal. *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex. 1980). Section 51.014 contains specific grants of jurisdiction over appeals from certain interlocutory orders. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014. Subdivision six confers on members of the electronic and print media, and those whose statements have been published in the media, the right to appeal from a denial of a motion for summary judgment that is based "in whole or in part" upon a free speech claim. *Id.* § 51.014(6). Delta argues that the statute

---

4. The parties agree that this is the first time this question has been presented to a court of appeals.

allows us to address all claims if any claim involved a defense based on free speech.

In the instances allowed by section 51.014(6), we have jurisdiction of an "appeal from an interlocutory *order* . . . that: . . . (6) *denies a motion* for summary judgment that is *based in whole or in part* " on free-speech claims. *Id.* (emphasis added). A plain reading of the statute shows that the appeal is from "the order." *Monsanto Co. v. Cornerstones Mun. Utility Dist.*, 865 S.W.2d 937, 939 (Tex.1993) (unless a statute is ambiguous, we must follow its clear language and seek the intent of the legislature as found in the plain and common meaning of the words and terms used). Thus, when section 51.014(6) applies, an order denying a motion for summary judgment is fully appealable.

If, however, we read the statute incorrectly, other reasons also make us believe that we have jurisdiction over all of Delta's points of error, which affect all of Norris' and NI's claims. In *Randall's Food Mkts.*, a suit involving a claim of slander, the Supreme Court determined that, because it had jurisdiction over several other causes of action, it had jurisdiction over the "entire case," including the slander claim, despite an express statute making the determination of slander claims final in the courts of appeals.[5] *Randall's Food Mkts.*, 891 S.W.2d at 643–44; Act of May 29, 1987, 70th Leg., R.S., Ch. 1106, 1987 Tex.Gen.Laws 3804, 3804 (formerly codified as Tex.Gov't.Code Ann. § 22.225(b)(2)).

Finally, we believe that the recent trend in the decisions of the Supreme Court has been to allow disposition of as many claims as possible while a case is on appeal, to promote judicial economy. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996) (court of appeals should consider all grounds that the trial court rules on in granting summary judgment and *may* consider grounds that the trial court does not rule on in the interest of judicial economy); *Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336, 337–38 (Tex.1997) (issues determined on appeal should be preserved as partial summary judgment when remanding, instead of a complete reversal and remand) (modifying *Maffrige v. Ross*, 866 S.W.2d 590 (Tex.1993)).

For these reasons, we will consider Delta's other points complaining of the denial of its motion for summary judgment.

## BREACH OF CONTRACT

NI asserts that, after Delta gave the thirty-day termination notice, it did not permit NI to continue performing mail and baggage handling duties during the termination period. Delta's motion for summary judgment on this claim contends that NI · is entitled only to "expenses incurred and profits that it could have made for the termination period." Delta says that, because it tendered to NI compensation for those items, NI cannot recover for breach of contract.

Second, NI alleges that it would have fired several of its employees had Delta not instructed it to cooperate with postal inspectors, who requested that the employees be retained during the investigation. Delta maintains that NI retained the right to fire any of its employees at any time.

As a further defense, Delta says that NI's employees' criminal acts excused Delta from performance of the contract.

The summary judgment evidence is unclear about the extent to which and how many employees NI retained at the request of postal inspectors. Also, assuming that Delta had the right to prohibit NI from continuing to perform under the contract and that the proper measure of damages is expenses and lost profits, as Delta maintains, the summary judgment evidence shows that Delta sent NI a check for $14,011.95 in an attempt to pay those damages. NI, however, was demanding $140,119.52. Nothing in the record shows that NI agreed to the lesser sum or that the check was in fact negotiated. In short, our review of the summary-judgment evidence, accepting all evidence favorable to the non-movant as true and indulging every reasonable inference in favor of the

---

5. Section 22.225 of the Government Code has since been amended to remove the provision that made decisions on slander claims final in the courts of appeals. Tex.Gov't.Code Ann. § 22.225 (Vernon 1988 & Supp.1997).

non-movant, reveals genuine issues of material fact surrounding the termination of the contract. *Nixon*, 690 S.W.2d at 548–49. Thus, the court properly denied Delta's motion for summary judgment on NI's breach of contract claim.

## GOOD FAITH AND FAIR DEALING

NI also asserts a claim for breach of the duty of good faith and fair dealing arising out of the contract. The contract contains no express duty, and Delta contends that nothing about the facts creates an implied duty. We agree.

■■■ Contracts in general do not contain an implied duty of good faith and fair dealing. *FDIC v. Coleman*, 795 S.W.2d 706, 708–09 (Tex.1990) (bank-guarantor relationship) (a duty of good faith is not imposed in every contract but only in special relationships marked by shared trust or an imbalance in bargaining power) (citing *English v. Fischer*, 660 S.W.2d 521, 524–25 (Tex.1983)). Delta contracted with NI to handle the mail, so to that extent, NI was a subcontractor. NI also handled baggage as Delta's contractor. NI has referred us to no precedent where either relationship has resulted in a covenant of good faith and fair dealing being implied in the contract that created the relationship. Because no duty of good faith and fair dealing exists or is implied in the contract between these parties, we will reverse the denial of Delta's motion for summary judgment on NI's cause of action based on that theory and render a partial summary judgment that NI take nothing on that claim.

## TORTIOUS INTERFERENCE WITH CONTRACTS

■■■ NI also claims that Delta tortiously interfered with its employee relationships and contracts by restricting its ability to supervise, discipline, and terminate employees. To recover for tortious interference with an existing contract, a plaintiff must prove: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) the act was a proximate cause of the plaintiff's damages; and (4) actual damage or loss. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 210 (Tex.1996)

(citing *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.1995)). Even if a plaintiff establishes these elements, a defendant may still prevail upon establishing the affirmative defense of justification. *Id.* A party is justified in interfering with another's contract if it exercises (1) its own legal rights or (2) a good faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken. *Id.* at 211.

■■■ Delta cannot tortiously interfere with its own contract with NI. *Holloway*, 898 S.W.2d at 795. NI asserts, however, interference with its contracts with third parties, *i.e,* its employees. NI argues that when it discovered theft problems amongst its employees, Delta asked NI to cooperate with the postal inspectors and prevented it from terminating those employees.

■■■ As with NI's breach of contract claim, the summary judgment evidence is unclear about the extent to which and how many employees NI retained at the request of postal inspectors. Accepting all evidence favorable to the non-movant as true and indulging every reasonable inference in favor of the non-movant, genuine issues of material fact exist surrounding the tortious interference claim. *Nixon*, 690 S.W.2d at 548. Thus, the court properly denied Delta's motion for summary judgment on NI's tortious interference claim.

## CONCLUSION

For the reasons stated, we reverse the decision of the trial court and grant a partial summary judgment that Norris take nothing by virtue of his claims of defamation, business disparagement, and intentional infliction of mental anguish and that NI take nothing by virtue of its claims for defamation, business disparagement, and breach of a duty of good faith and fair dealing. We affirm the court's denial of Delta's motion for summary judgment on NI's causes of action for breach of contract and tortious interference with its employee contracts, and we remand the cause for trial.

## COSTS

Because we do not affirm the order appealed from, we direct that each party be liable for and taxed its own costs of this appeal. TEX.CIV.PRAC. & REM.CODE ANN. § 51.015 (Vernon 1997).