

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-21-00079-CV

GARY CLARK, JR. AND NICOLE TRUNFIO CLARK, APPELLANTS

V.

SCOTT OGLE, APPELLEE

On Appeal from the 274th District Court
Hays County, Texas
Trial Court No. 20-2146, Honorable Gary L. Steel, Presiding

August 10, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Gary Clark, Jr. and Nicole Trunfio Clark (the Clarks) appeal the trial court's denial of their motion to dismiss Scott Ogle's Texas Rule of Civil Procedure 202 petition.[1] Through six issues, the Clarks contend that 1) the Texas Citizens Participation Act (TCPA) applies to Texas Rule of Civil Procedure 202 petitions, 2) Ogle's defamation claims are time-barred and therefore the trial court should dismiss Ogle's petition as moot,

---

[1] Per that rule, one may petition the court for an order allowing the taking of a deposition to (a) perpetuate or obtain a person's testimony for use in an anticipated suit or (b) investigate a potential claim or suit. TEX. R. CIV. P. 202.1(a), & (b).

3) the trial court erred in denying their motion to dismiss because Ogle failed to present clear and specific evidence in support of his claims, 4) Ogle's claims fail as a matter of law and 5) the alleged defamatory statements are "true or substantially true." We reverse and render.[2]

*Background*

The Clarks purchased property outside of Austin, Texas, which was adjacent to property owned by Ogle. On one occasion, Ogle's donkey wandered onto the Clark's property. The ensuing exchange between Clark and Ogle resulted in the former writing a song titled "This Land." It concerns racism in the United States. Its lyrics include the following verse:

> Fifty acres and a Model A
> Right in the middle of Trump country
> I told you, "There goes a neighborhood"
> Now mister Williams ain't so funny
> I see you looking out your window
> Can't wait to call the police on me.[3]

While promoting the album in which appeared "This Land," Clark gave interviews to both *Rolling Stone* and *FLOOD* magazines. It is in those interviews that the alleged defamatory statements were published. For instance, in the February 7, 2019 *Rolling Stone* article, it was written that:

> Clark wrote it [the song "This Land"] after a confrontation with his own neighbor near his new 50-acre ranch outside Austin, where Clark lives with his wife, model Nicole Trunfio, and their toddlers, Zion and Gia. One day, Clark drove over to tell the neighbor his donkey had wandered onto Clark's property. "He was very disrespectful to me in front of my kids," says Clark.

---

[2] Because this appeal was transferred from the Third Court of Appeals, we are obligated to apply its precedent when available in the event of a conflict between the precedents of that court and this Court. *See* TEX. R. APP. P. 41.3.

[3] GARY CLARK, JR., *This Land, on* THIS LAND (Warner Bros. Records 2019).

"And I don't play with that shit. He started saying, 'You don't live here. There's no way you could live here. Who really owns this place?'"

And, in the July 3, 2019, *FLOOD* article, the following passage appeared:

Clark and his family purchased a sprawling fifty-acre ranch estate-complete with a fourteen-stall horse barn-outside of Austin in the bustling community of Kyle, Texas. A chance encounter with a neighbor was enough to remind the Grammy winner that all the success in the world still doesn't begin to transcend race in America. When Clark approached the neighbor to let him know that his donkey had found its way onto Clark's land, the neighbor's response was less than cordial. According to Clark, the man was blatantly disrespectful-and in front of his children.

The gist of the neighbor's rant was that he refused to accept that Clark was, indeed, the owner of the impressive property. "I don't know what kind of day he was having, or what his situation is. But it was at the end of a long year and a long day, and I was just trying to check my damn mail," Clark sighs. "Like, really, man? But I wish him all the best."

Two other publications later alluded to the *Rolling Stone* and *Flood* articles about Clark. According to Ogle, a "two-page article from *VailDaily,*" published on September 3, 2019, discussed the interview with *Rolling Stone*, alluded to "a recent instance in which [Clark] experienced racism," and reiterated the donkey incident. The other publication involved "a four-page article from *Afterglow*" released on February 19, 2021. It focused on the lyrics to "This Land" and indicated that the "Mr. Williams" mentioned in them was Clark's neighbor.[4]

---

[4] Another instance of supposed defamation was mentioned by Ogle. It apparently consisted of passages from a book scheduled for publication on March 15, 2021. The record fails to address whether the book was released.

3

On September 24, 2020, Ogle petitioned under Texas Rule of Civil Procedure 202 to depose the Clarks and gather information about the alleged defamations. His petition was amended to include opportunity to depose a neighbor, as well. Leave to depose those individuals was granted and the depositions were scheduled to occur in mid-December of 2020. Before they transpired, though, the Clarks invoked the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. § 27.001 *et seq.* (West 2020) and moved to dismiss Ogle's Rule 202 petition. The motion was denied on March 30, 2021, and the Clarks appealed.

Of the myriad contentions asserted on appeal, we address only three. One concerns whether the TCPA applies to a Rule 202 proceeding. Another involves limitations while the last concerns whether a reasonable person could interpret an alleged defamatory statement as referring to Ogle.

Regarding the first, the Austin Court of Appeals has held the TCPA applicable to Rule 202 proceedings. *In re Elliott*, 504 S.W.3d 455, 465 (Tex. App—Austin 2016, orig. proceeding). We are bound to follow that authority because the appeal was transferred to us from that court. Furthermore, "the relief sought by a Rule 202 petition investigating a potential claim or suit is an equitable remedy," as explained by the *Elliot* court. *Id.* at 464–65. Being an equitable remedy, it falls outside the amended definition of "legal action" that excludes "a procedural action taken or motion made in an action that does not amend or add a claim for legal, equitable, or declaratory relief," contrary to Ogle's suggestion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6)(A) (defining "Legal action" and what the term does not include).

4

Regarding the second, defamation claims have a one-year limitations period commencing from the time they accrue. TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a) (West 2017); *Glassdoor, Inc. v. Andra Grp., L.P.*, 575 S.W.3d 523, 527 (Tex. 2019); *Ruiz v. Austin Indep. Sch. Dist.*, No. 03-02-00798-CV, 2004 Tex. App. LEXIS 4725, at *10–11 (Tex. App.—Austin May 27, 2004, no pet.) (mem. op.). Furthermore, they generally accrue when the purported defamatory statement is published. *See Childs v. Haussecker*, 974 S.W.2d 31, 36–37 (Tex. 1998) (holding that a cause of action generally accrues when a wrongful act causes an injury, regardless of when the plaintiff learns of the injury or if all the resulting damages have yet to occur); *see also Glassdoor Inc.*, 575 S.W.3d at 528 (noting that the discovery rule may apply to an action for defamation when the statement is not a matter of public knowledge).[5]

As mentioned earlier, Ogle cites four publications he considered defamatory. None have yet to be the substance of an actual lawsuit. The first occurred in February of 2019. It appeared in the *Rolling Stone* article. Given that the date of this opinion is more than one year after February 2019, limitations applicable to that supposed defamation expired. The same is no less true of the utterances appearing in the July 2019 issue of *Flood* and September 2019 issue of *Vail Daily*. Neither were the basis for any defamation suit initiated by Ogle. Thus, limitations bars a defamation suit founded upon them.

---

[5] Ogle failed to plead the discovery rule or provide evidence illustrating its applicability, if any, to his situation. This is of import since a plaintiff must first raise the discovery rule. *Draughton v. Johnson*, __ S.W.3d __, __, 2021 Tex. LEXIS 462, at *12–13 (Tex. June 11, 2021*); see also Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518) (Tex. 1988) (holding that at trial, "[t]he [plaintiff] seeking to benefit from the discovery rule must also bear the burden of proving and securing favorable findings thereon" as it will "generally have greater access to the facts necessary to establish that it falls within the rule").

That leaves the *Afterglow* statement. It was published in February of 2021, and limitations has yet to expire. Yet, that alone does not mean the trial court acted appropriately in denying the motion to dismiss, as we now explain.

The supposed defamatory statement consisted of: "[p]rior to the album's release, Clark <u>recalled</u> the time he was approached by a neighbor, referred to in the album as Mr. Williams, who asked him: 'Who owns this house? There's no way you can live here - who owns this house?'" Missing from that utterance, and the article itself, is mention of the neighbor's actual name and reference to the donkey incident described in earlier articles. This is of import because the identity of the person claiming to be defamed must be discernible from the statement and its context. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (one of the several elements of defamation and to be a defamatory statement concerns the plaintiff or complaining party); *Wright v. Rosenbaum*, 344 S.W.2d 228, 232 (Tex. Civ. App.—Houston 1961, no pet.) (stating that the defamatory words must refer to some ascertained or ascertainable person who must be the plaintiff); *see also Chehab v. Edgewood Dev., Ltd.*, 619 S.W.3d 828, 835 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (stating that statements which neither identify the plaintiff nor set forth any wrongful conduct have no defamatory meaning); *Cox Tex. Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 433–34 (Tex. App.—Austin 2007, pet. denied) (stating that even "if the plaintiff is not expressly named, the plaintiff may satisfy his burden on the 'of and concerning' element by offering proof that persons acquainted with the plaintiff would understand the publication to refer to him"); *McGregor v. Vela,* No. 03-01-00299-CV, 2002 Tex. App. LEXIS 1131, at *12 (Tex. App.—Austin Feb. 14, 2002,

no pet.) (mem. op.) (stating that the publication need not name the plaintiff if those who know or are acquainted with him understand that the defamatory publication refers him).

Again, the statement at bar does not name Ogle. Nevertheless, he believes that he was identified because he "is the only person in the subdivision where both Appellants and Appellee reside who owns a donkey. Under these circumstances, acquaintances and neighbors understand that the statements made by Appellant Gary Clark, Jr. refer to Appellee Scott Ogle." Thus, the donkey plays a pivotal role in the story. It serves to identify him as the actual person about whom Clark uttered the comment, according to Ogle. Yet, the *Afterglow* article says nothing of a donkey or incident involving one. Instead, third parties are only told about a "neighbor" called "Mr. Williams." Nothing in the article or record suggests that Clark had only one neighbor and that neighbor was Ogle. Nor does anything in it suggest that Ogle went by the name of or was known by others as "Williams." Similarly missing is any reference by *Afterglow* to prior articles mentioning the donkey. Nor has Ogle cited us to evidence of record from third parties familiar with him and suggesting they understood the comments to refer to him. This leads us to conclude that Ogle failed to present clear and specific evidence establishing a prima facie case identifying him as the subject of Clark's words. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c) (stating that a court may not dismiss the action if the party bringing it "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question"); *see Wright,* 344 S.W.2d at 231–32 (holding the statement that one of four ladies took the missing dress was insufficient to identify the plaintiff as the person who allegedly took the dress).

We sustain in part the Clarks' issue concerning limitations and that concerning the lack of evidence from which Ogle could be ascertained as the subject of the comments. Denying the Clarks' motion to dismiss was error. Thus, we reverse that decision, render judgment dismissing Ogle's Rule 202 petition, and remand the cause to the trial court to consider an award of attorney's fees, costs, and sanctions per § 27.009 of the Texas Civil Practice and Remedies Code.

Brian Quinn
Chief Justice

8